TAMMY D. YORKE, EXECUTOR OF THE ESTATE OF WILLIAM R. YORKE, JR., PLAINTIFF-APPELLANT v. NOVANT HEALTH, INC., NOVANT HEALTH TRIAD REGION, L.L.C., FORSYTH MEMORIAL HOSPITAL, INC., ALL D/B/A FORSYTH MEDICAL CENTER, AND TENESA McCASKILL-GAINEY, DEFENDANTS-APPELLEES

No. COA07-503

(Filed 2 September 2008)

## 1. Appeal and Error— settlement of record—timeliness

The fact that the trial judge is not available for judicial settlement of the record on appeal does not relieve an appellant from the burden of seeking an extension of time under the appellate rules. Plaintiff's failure to seek an appropriate extension of time resulted in the denial of its motion in the Court of Appeals to deem the record timely filed and amounted to substantial violations of the appellate rules. However, the Court of Appeals in its discretion decided not to impose sanctions.

YORKE v. NOVANT HEALTH, INC.

[192 N.C. App. 340 (2008)]

**2. Appeal and Error— appellate jurisdiction—notice of appeal— intermediate order not included—judgment necessarily affected**

The Court of Appeals had jurisdiction pursuant to N.C.G.S. § 1-278 to review a directed verdict order that denied plaintiff recovery on a res ipsa loquitur theory even though plaintiff's notice of appeal did not include that order. The order wholly denied plaintiff one of his theories of recovery, involved the merits, and necessarily affected the judgment.

**3. Appeal and Error— appellate jurisdiction—discovery protection order—interlocutory—judgment not necessarily affected.**

The Court of Appeals lacked jurisdiction under N.C. R. App. P. 3(d) or N.C.G.S. § 1-278 to consider an order protecting a hospital's risk management file from discovery where the order was a nonappealable interlocutory order and did not necessarily affect the judgment.

**4. Appeal and Error— assignments of error—substantial compliance**

Plaintiff's assignments of error were in substantial compliance with the rules of appellate procedure, even assuming they were less specific than required by Rule 10, and were not dismissed.

**5. Negligence— res ipsa loquitur—direct proof offered—directed verdict**

The trial court did not err by granting defendants a directed verdict on plaintiff's res ipsa loquitur theory of negligence, and by not instructing on that theory, where plaintiff offered direct proof of the cause of his injury.

**6. Evidence— medical malpractice—failure to prepare internal report—irrelevancy**

In a medical malpractice case, defendants' failure to prepare an incident or Quality Assessment Report (QAR) was irrelevant to the issue of whether they breached the standard of care owed to the patient, and the trial court did not err by excluding evidence of that failure.

YORKE v. NOVANT HEALTH, INC.

[192 N.C. App. 340 (2008)]

**7. Medical Malpractice— automatic blood pressure cuff— identified at trial—not an instant of surprise—new trial denied**

The trial court did not abuse its discretion in a medical malpractice case by denying a new trial based on alleged surprise when the type of automatic blood pressure cuff used on plaintiff was identified at trial. The record reveals that defense counsel had previously identified the machine at issue and made it available for inspection. Furthermore, plaintiff requested and received a spoliation instruction.

Appeal by Plaintiff from judgment entered 19 October 2005 and from order entered 30 December 2005 by Judge L. Todd Burke in Superior Court, Forsyth County. Heard in the Court of Appeals 10 December 2007.

*Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harold L. Kennedy, III and Harvey L. Kennedy, for Plaintiff-Appellant.*

*Bennett & Guthrie, P.L.L.C., by Richard V. Bennett and Joshua H. Bennett, for Defendants-Appellees.*

McGEE, Judge.

The record in this case shows that William R. Yorke, Jr. (Mr. Yorke) filed an amended complaint dated 28 January 2005 against Novant Health, Inc.; Novant Health Triad Region, L.L.C.; Forsyth Memorial Hospital, Inc., all d/b/a Forsyth Medical Center (together, Defendant Hospital); and Tenesa McCaskill-Gainey (Defendant McCaskill-Gainey) (collectively, Defendants).[1] Mr. Yorke alleged that he was injured by the negligence of Defendant McCaskill-Gainey while he was a patient at Defendant Hospital. Specifically, Mr. Yorke alleged that Defendant McCaskill-Gainey was negligent in that, *inter alia*, she: placed a blood pressure cuff too tightly on Mr. Yorke's arm; further tightened the cuff after Mr. Yorke complained about pain in his arm; failed to check the blood pressure machine to ensure that it was functioning properly; and failed to address the injury that allegedly resulted from the cuff on Mr. Yorke's arm. Plaintiff also pleaded the doctrine of *res ipsa loquitur* against all Defendants.

---

1. Mr. Yorke's original complaint incorrectly listed "Tanisha Gant" as the individual defendant. Mr. Yorke subsequently filed a motion dated 29 October 2004 to amend his complaint to change the name of the individual defendant to "Tenesa McCaskill-Gainey." The trial court granted Mr. Yorke's motion in an order dated 15 November 2004.

**YORKE v. NOVANT HEALTH, INC.** ·

[192 N.C. App. 340 (2008)]

During pre-trial discovery, Mr. Yorke requested that Defendant Hospital produce "[t]he complete file of the Risk Management Department at Forsyth Medical Center concerning the hospitalization of [Mr. Yorke]" (the risk management file). Defendant Hospital refused to produce the risk management file, and filed a motion for a protective order on 7 October 2004 claiming that the risk management file was the product of a medical review committee and therefore was protected from discovery pursuant to N.C. Gen. Stat. § 131E-95(b). Defendant Hospital also claimed that the risk management file contained trial preparation materials that were protected from discovery pursuant to N.C. Gen. Stat. § 1A-1, Rule 26(b)(3). Mr. Yorke filed a motion dated 29 October 2004 to compel production of the risk management file. The trial court entered an order on 20 December 2004 in which the trial court, *inter alia*, granted Defendant Hospital's motion for a protective order.

At trial, Mr. Yorke testified that he suffered a heart attack on 16 December 2001 and was admitted to Defendant Hospital. An unidentified nurse took Mr. Yorke's vital signs and put a blood pressure cuff on Mr. Yorke's left arm. Defendant McCaskill-Gainey entered Mr. Yorke's room later that evening, and Mr. Yorke asked her to loosen the blood pressure cuff because it was hurting his arm. Defendant McCaskill-Gainey explained to Mr. Yorke that she could not loosen the cuff because the cuff would not function properly if she loosened it.

Mr. Yorke called Defendant McCaskill-Gainey into his room later during the evening of 16 December 2001 and repeated his request for her to loosen the blood pressure cuff because it was causing him substantial pain. Defendant McCaskill-Gainey again explained that she could not loosen the cuff. Mr. Yorke testified that later that evening he again called Defendant McCaskill-Gainey into his room because "[t]he blood pressure cuff was killing my arm. It was hurting plumb into my fingers." According to Mr. Yorke, Defendant McCaskill-Gainey then "took [the cuff] off and put it back on even tighter than what it was before." Mr. Yorke testified that this caused him intense pain.

Mr. Yorke testified that he continued to suffer from pain in his arm from 17 December through 20 December 2001. On the morning of 20 December 2001, a doctor came to check on Mr. Yorke and immediately removed Mr. Yorke's blood pressure cuff. Mr. Yorke testified that he suffered muscle and nerve damage to his left arm as a result of wearing the blood pressure cuff, and that he had suffered pain in his

**YORKE v. NOVANT HEALTH, INC.**

[192 N.C. App. 340 (2008)]

left arm on a daily basis since leaving the hospital. Mr. Yorke also stated that he had suffered a significant loss of strength and feeling in his left arm since leaving the hospital.

Following Mr. Yorke's evidence, Defendants moved for a directed verdict on Mr. Yorke's *res ipsa loquitur* theory of recovery. Defendants argued that *res ipsa loquitur* "is only available as a means to find liability when no proof of the cause of injury is available," and that Mr. Yorke had introduced evidence that the cause of his injury was Defendant McCaskill-Gainey's having applied the blood pressure cuff too tightly on his arm. The trial court granted Defendants' directed verdict motion as to Mr. .Yorke's *res ipsa loquitur* theory of recovery.

Defendants' evidence at trial tended to show that portions of Mr. Yorke's testimony were fabricated, that Defendants were not responsible for Mr. Yorke's alleged injury, and that Mr. Yorke exaggerated the nature of his alleged injury. For example, one of Defendants' expert witnesses, Dr. Joseph T. Alexander, testified that the bruising on Mr. Yorke's arm likely resulted not from the blood pressure cuff, but rather from blood thinners and intravenous catheters that were placed in Mr. Yorke's arm. Defendants also challenged the extent of Mr. Yorke's injuries by showing a videotape of Mr. Yorke using his left arm to turn pages during his deposition. Defendants further challenged Mr. Yorke's testimony by demonstrating through cross-examination that Mr. Yorke's version of the events that allegedly led to his injury had changed over time. Specifically, Defendants demonstrated that Mr. Yorke had previously alleged that he was injured on a day that Defendant McCaskill-Gainey was not working at Defendant Hospital.

During the charge conference, Mr. Yorke requested a jury instruction on *res ipsa loquitur*. The trial court denied Mr. Yorke's request and instructed the jury on standard negligence principles. The jury returned a verdict on 14 October 2005 finding that Mr. Yorke was not injured by Defendants' negligence. In accordance with the verdict, the trial court entered a judgment on 19 October 2005 ordering that Mr. Yorke was not entitled to recover from Defendants. Mr. Yorke filed a motion for a new trial on 27 October 2005, and the trial court denied Mr. Yorke's motion on 30 December 2005.

Mr. Yorke gave notice of appeal on 4 May 2006 from the trial court's judgment and from the order denying his motion for a new trial. Mr. Yorke died on 2 October 2006 and counsel filed a motion to

**YORKE v. NOVANT HEALTH, INC.**

[192 N.C. App. 340 (2008)]

substitute the executor of Mr. Yorke's estate, Tammy D. Yorke (Plaintiff), as plaintiff in this case. The trial court granted the motion on 24 April 2007.

## I.

Before we address the merits of Plaintiff's appeal, we consider a number of motions currently before our Court.

Defendants have filed a motion to dismiss Plaintiff's appeal. Defendants argue that Plaintiff's appeal should be dismissed in whole, or in part, due to various violations of the Rules of Appellate Procedure. We consider each of Defendants' arguments in turn.

## A.

[1] Defendants first argue that Plaintiff's appeal should be dismissed in its entirety because Plaintiff did not settle the record on appeal in a timely manner, in violation of N.C.R. App. P. 11(c). Rule 11(c) provides that if a party requests judicial settlement of the record on appeal, a hearing to settle the record "shall be held not later than 15 days after service of the request for hearing upon the judge. The judge shall settle the record on appeal by order entered not more than 20 days after service of the request for hearing upon the judge." N.C.R. App. P. 11(c). Rule 11 also provides, however, that the deadline for judicial settlement of the record on appeal may be extended in accordance with Rule 27(c). N.C.R. App. P. 11(f). Under Rule 27(c), if an appellant requires an extension of time to procure judicial settlement of the record, the appellant must file a motion with this Court seeking an extension. N.C.R. App. P. 27(c)(2).

The record in this case reveals that Plaintiff filed a request dated 18 December 2006 with the trial court for judicial settlement of the record on appeal. The trial court held a hearing and settled the record on appeal on 24 April 2007, more than three months past the deadline set by Rule 11(c). Plaintiff never filed a motion with this Court seeking an extension of time to procure judicial settlement of the record on appeal. Rather, Plaintiff filed with this Court a "motion *nunc pro tunc* for an extension of time to deem the record on appeal timely filed" on 10 December 2007, the day this case was heard by our Court.

Defendants argue that Plaintiff's failure to seek an extension of time from this Court for judicial settlement of the record subjects Plaintiff's appeal to dismissal. Plaintiff responds that her appeal is

**YORKE v. NOVANT HEALTH, INC.**

[192 N.C. App. 340 (2008)]

not subject to dismissal because she did not violate Rule 11(c). Plaintiff argues that the trial court judge who presided over Plaintiff's trial rotated to another county between December 2006 and April 2007, and therefore would have been unable to settle the record on appeal before April 2007 even had Plaintiff sought to calendar a hearing during the time period required by Rule 11(c).

Our Court has stated that "[t]he appellate rules that regulate the timing of the settlement and filing of the record on appeal are not arbitrary formalities, but ' "are designed to keep the process of perfecting an appeal flowing in an orderly manner." ' " *Cadle Co. v. Buyna*, 185 N.C. App. 148, 150, 647 S.E.2d 461, 463 (2007) (quoting *Kellihan v. Thigpen*, 140 N.C. App. 762, 763, 538 S.E.2d 232, 234 (2000) (quoting *Craver v. Craver*, 298 N.C. 231, 236, 258 S.E.2d 357, 361 (1979))). Further, it has long been established that "it is the appellant who 'bears the burden of seeing that the record on appeal is properly settled and filed with this Court.' " *Groves v. Community Hous. Corp.*, 144 N.C. App. 79, 82, 548 S.E.2d 535, 537 (2001) (quoting *McLeod v. Faust*, 92 N.C. App. 370, 371, 374 S.E.2d 417, 418 (1988)). Therefore, Plaintiff was required to seek an extension of time with this Court under Rule 27(c)(2) in order to obtain judicial settlement of the record on appeal outside of the time limit set by Rule 11(c). The fact that a trial court judge may be unavailable to settle the record within the time set by Rule 11(c) does not relieve an appellant's burden of seeking an extension of time under the appellate rules. We conclude that Plaintiff has violated the appellate rules, and we therefore deny Plaintiff's "motion *nunc pro tunc* for an extension of time to deem the record on appeal timely filed."

We must now determine whether dismissal of Plaintiff's appeal is appropriate. Rule 11(c) is a nonjurisdictional requirement "designed primarily to keep the appellate process 'flowing in an orderly manner.' " *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008) (quoting *Craver*, 298 N.C. at 236, 258 S.E.2d at 361). Our Supreme Court has recently stated:

> [W]hen a party fails to comply with one or more nonjurisdictional appellate rules, the court should first determine whether the noncompliance is substantial or gross under Rules 25 and 34. If it so concludes, it should then determine which, if any, sanction under Rule 34(b) should be imposed.

*Id.* at 201, 657 S.E.2d at 367.

**YORKE v. NOVANT HEALTH, INC.**

[192 N.C. App. 340 (2008)]

In this case, the Rules of Appellate Procedure required Plaintiff to obtain judicial settlement of the record on appeal, or an extension of time from this Court, within twenty days of 18 December 2006. The record does not indicate that Plaintiff made any attempt to schedule a settlement hearing or file a motion with this Court within the twenty-day deadline. In fact, the record does not indicate that Plaintiff made any such attempt until more than three months after the deadline set out in Rule 11(c). Under these circumstances, we hold that Plaintiff committed substantial violations of the appellate rules that would support an award of sanctions under N.C.R. App. P. 34(b). After much consideration, we have decided in our discretion not to impose sanctions pursuant to Rule 34(b). Nonetheless, counsel for Plaintiff must be mindful of their responsibilities under the appellate rules when prosecuting future appeals.

B.

[2] Defendants next argue that Plaintiff is not entitled to appellate review of her first assignment of error, in which Plaintiff argues that the trial court erred by granting Defendants' motion for a directed verdict on Mr. Yorke's *res ipsa loquitur* theory of recovery. Defendants also argue that Plaintiff is not entitled to appellate review of her sixth assignment of error, in which Plaintiff argues that the trial court erred by granting Defendants' motion for a protective order regarding the risk management file. Defendants argue that our Court has no jurisdiction to review the trial court's directed verdict and discovery orders because Plaintiff's notice of appeal does not include these orders among those from which Plaintiff appeals. Rather, Plaintiff's notice of appeal only lists the trial court's 19 October 2005 judgment and 30 December 2005 order denying Mr. Yorke's motion for a new trial.

N.C.R. App. P. 3(d) provides that an appellant's notice of appeal "shall designate the judgment or order from which appeal is taken[.]" An appellant's failure to designate a particular judgment or order in the notice of appeal generally divests this Court of jurisdiction to consider that order. *See, e.g., Fenz v. Davis*, 128 N.C. App. 621, 623, 495 S.E.2d 748, 750 (1998) (where the notice of appeal listed the trial court's order denying a new trial, but did not list the actual judgment entered upon the jury verdict, the Court held that it lacked jurisdiction under Rule 3(d) to review any assignment of error related to the trial proceedings and judgment).

Notwithstanding the jurisdictional requirements in Rule 3(d), our Court has recognized that even if an appellant omits a certain order from the notice of appeal, our Court may still obtain jurisdiction to review the order pursuant to N.C. Gen. Stat. § 1-278. *See* N.C. Gen. Stat. § 1-278 (2007) (stating that "[u]pon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment"). Review under N.C.G.S. § 1-278 is permissible if three conditions are met: "(1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment." *Dixon v. Hill*, 174 N.C. App. 252, 257, 620 S.E.2d 715, 718 (2005), *disc. review denied*, 360 N.C. 289, 627 S.E.2d 619, *cert. denied*, 548 U.S. 906, 165 L. Ed. 2d 954 (2006). An order involves the merits and necessarily affects the judgment if it deprives the appellant of one of the appellant's substantive legal claims. *See, e.g.*, *Charles Vernon Floyd, Jr. & Sons, Inc. v. Cape Fear Farm Credit, ACA*, 350 N.C. 47, 49, 51, 510 S.E.2d 156, 158, 159 (1999) (where the trial court ordered the plaintiffs to elect whether to seek recovery for breach-of-contract damages or unfair and deceptive trade practices, our Supreme Court held that the trial court's election-of-remedies order "involved the merits and affected the judgment" because it "deprived [the] plaintiffs of one of their claims"), *overruled in part on other grounds, Dep't of Transp. v. Rowe*, 351 N.C. 172, 176, 521 S.E.2d 707, 710 (1999).

We first consider whether our Court has jurisdiction under N.C.G.S. § 1-278 to review the trial court's directed verdict in favor of Defendants on Mr. Yorke's *res ipsa loquitur* theory of recovery. Defendants do not dispute that Mr. Yorke objected to the trial court's directed verdict order at trial, or that the directed verdict order was interlocutory and not immediately appealable. We further conclude that because the directed verdict order wholly denied Mr. Yorke one of his theories of recovery, namely, that Defendants were negligent pursuant to the doctrine of *res ipsa loquitur*, the order "involved the merits and necessarily affected the judgment." *Dixon*, 174 N.C. App. at 257, 620 S.E.2d at 718. Therefore, our Court has jurisdiction to review the trial court's directed verdict order pursuant to N.C.G.S. § 1-278.

[3] We next consider whether our Court has jurisdiction under N.C.G.S. § 1-278 to review the trial court's protective order regarding the risk management file. N.C. Gen. Stat. § 1A-1, Rule 46(b) provides:

**YORKE v. NOVANT HEALTH, INC.**

[192 N.C. App. 340 (2008)]

> With respect to . . . orders of the court not directed to the admissibility of evidence, formal objections and exceptions are unnecessary. In order to preserve an exception to any such ruling or order . . . , it shall be sufficient if a party, at the time the ruling or order is made or sought, makes known to the court the party's objection to the action of the court or makes known the action that the party desires the court to take and the party's grounds for its position.

N.C. Gen. Stat. § 1A-1, Rule 46(b) (2007). The record in this case reveals that Mr. Yorke vigorously opposed Defendants' motion for a protective order by filing an objection to Defendants' motion, filing a motion to compel discovery of the disputed documents, and presenting his arguments during an 8 November 2004 hearing before the trial court. We therefore conclude that "at the time the ruling or order [was] made or sought," [Mr. Yorke] "ma[de] known to the [trial] court [his] objection to the action of the [trial] court" and "ma[de] known the action that [he] desire[d] the [trial] court to take and [his] grounds for [his] position." N.C.G.S. § 1A-1, Rule 46(b).

Further, the protective order in this case was interlocutory and not immediately appealable. It is correct that a trial court's interlocutory order compelling discovery may be immediately appealable if the party opposing discovery contends that the material is statutorily protected from discovery. *See Sharpe v. Worland*, 351 N.C. 159, 166, 522 S.E.2d 577, 581 (1999) (holding that "when . . . a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right" and is immediately appealable). However, Defendants have cited no authority for their proposition that a trial court's *grant of a protective order* similarly affects a substantial right of the party seeking the disputed documents. Indeed, the type of right at issue in *Sharpe*—the right not to disclose protected materials—is not implicated when a trial court grants a protective order. We therefore conclude that the trial court's protective order in this case was interlocutory and not immediately appealable.

Finally, we must determine whether the protective order "involved the merits and necessarily affected the judgment." *Dixon*, 174 N.C. App. at 257, 620 S.E.2d at 718. We conclude that it did not. As noted above, our Courts have found an interlocutory order to involve the merits and necessarily affect the judgment where the order

deprived an appellant of one of her substantive legal claims. *See, e.g.,* *Floyd,* 350 N.C. at 51, 510 S.E.2d at 159; (finding review available under N.C.G.S. § 1-278 where the trial court's election-of-remedies order forced the plaintiffs to forgo one of their claims); *Gaunt v. Pittaway,* 139 N.C. App. 778, 782-83, 534 S.E.2d 660, 663, *disc. review denied,* 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied,* 353 N.C. 371, 547 S.E.2d 810, *cert. denied,* 534 U.S. 950, 151 L. Ed. 2d 261 (2001) (finding review available under N.C.G.S. § 1-278 where the trial court's order dismissed the plaintiffs' claim for unfair and deceptive trade practices); *Brooks v. Wal-Mart Stores, Inc.,* 139 N.C. App. 637, 643, 535 S.E.2d 55, 60 (2000), *disc. review denied,* 353 N.C. 370, 547 S.E.2d 2 (2001) (finding review available under N.C.G.S. § 1-278 where the trial court's order dismissed one defendant's cross-claims against the other defendants).

In this case, however, the trial court's protective order did not deny Mr. Yorke any of his substantive legal claims. While the protective order did deny Mr. Yorke access to certain evidence, it did not resolve any substantive legal issues related to Mr. Yorke's negligence claim, nor did it deny Mr. Yorke his right to pursue his negligence claim, or to prove his negligence claim through introduction of other evidence and examination of witnesses. Therefore, the protective order did not "involve[] the merits and necessarily affect[] the judgment." *Dixon,* 174 N.C. App. at 257, 620 S.E.2d at 718.

In accordance with the above, we conclude that our Court lacks jurisdiction under either N.C.R. App. P. 3(d) or N.C.G.S. § 1-278 to consider Plaintiff's sixth assignment of error. Plaintiff's sixth assignment of error is therefore dismissed.

We note that Defendants have filed a motion asking this Court, in the event that we determine review is warranted, to seal the documents shielded by the protective order. Because this Court lacks jurisdiction to review the trial court's protective order, we dismiss Defendants' motion as moot.

## C.

[4] Defendants next argue that each of Plaintiff's remaining assignments of error should be dismissed because they each fail to state a sufficient legal basis for the errors they assert. *See* N.C.R. App. P. 10(c)(1) (stating that "[e]ach assignment of error shall . . . state plainly, concisely and without argumentation the legal basis upon which error is assigned").

We have reviewed Plaintiff's assignments of error and find them to be in substantial compliance with the rules of appellate procedure. Each of Plaintiff's assignments of error "directs the attention of the appellate court to the particular error about which the question is made[.]" N.C.R. App. P. 10(c)(1). Even assuming *arguendo* that Plaintiff's assignments of error are less specific than required by Rule 10(c)(1), we do not believe such errors, as they exist in this case, rise to the level of substantial or gross violations of Rule 10(c)(1) that would warrant sanctions. *See Dogwood*, 362 N.C. at 201, 657 S.E.2d at 367.

In sum, Plaintiff's motion *nunc pro tunc* for an extension of time to deem the record on appeal timely filed is denied. Defendants' motion to seal the documents included within the trial court's protective order is dismissed as moot. Defendants' motion to dismiss Plaintiff's appeal is allowed with respect to Plaintiff's sixth assignment of error. The remainder of Defendants' motion to dismiss is denied. We now turn to the merits of Plaintiff's remaining assignments of error.

## II.

Plaintiff raises four arguments on appeal. We consider each of Plaintiff's arguments in turn.

## A.

**[5]** Plaintiff first argues that the trial court erred by granting Defendants' motion for a directed verdict with respect to Mr. Yorke's *res ipsa loquitur* theory of negligence. When ruling on a motion for a directed verdict, a trial court "must view the evidence in the light most favorable to the nonmovant, resolving all conflicts in his favor and giving him the benefit of every inference that could reasonably be drawn from the evidence in his favor." *West v. Slick*, 313 N.C. 33, 40, 326 S.E.2d 601, 605 (1985). The trial court may only grant the motion if "the evidence, when so considered, is insufficient to support a verdict in the nonmovant's favor[.]" *Id.* at 40, 326 S.E.2d at 606. We review a trial court's ruling on a motion for a directed verdict *de novo*. *Denson v. Richmond Cty.*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003).

The doctrine of *res ipsa loquitur* applies only where: "[(1)] direct proof of the cause of an injury is not available, [(2)] the instrumentality involved in the accident is under the defendant's control, and [(3)] the injury is of a type that does not ordinarily occur in the

absence of some negligent act or omission." *Grigg v. Lester*, 102 N.C. App. 332, 333, 401 S.E.2d 657, 657-58, *disc. review denied*, 329 N.C. 788, 408 S.E.2d 520 (1991). Plaintiff argues that Mr. Yorke presented sufficient evidence to support each of these elements, and the trial court therefore erred by not allowing Mr. Yorke's *res ipsa loquitur* theory of negligence to go to the jury.

We first consider whether element one was met in this case. Our Court has held that the *res ipsa loquitur* doctrine is only applicable where "there is no direct proof of the cause of the injury available to the plaintiff." *Parks v. Perry*, 68 N.C. App. 202, 207, 314 S.E.2d 287, 290, *disc. review denied*, 311 N.C. 761, 321 S.E.2d 142, 143 (1984). In *Parks*, for example, the defendant doctor performed a hysterectomy on the plaintiff while the plaintiff was under general anesthesia. *Id.* at 204, 314 S.E.2d at 288. When the plaintiff awoke following surgery, she experienced numbness and weakness in her fingers. *Id.* Doctors later determined that the plaintiff had suffered damage to the ulnar nerve in her right arm. *Id.* Our Court held that on these facts, the plaintiff had satisfied the first element required to invoke the *res ipsa loquitur* doctrine:

> [T]here is no direct proof of the cause of the injury available to the plaintiff. The only evidence that [the plaintiff] can testify to is that before the general anesthesia she had a healthy functional right hand, yet after the operation she awoke with numb fingers as a result of damage to her ulnar nerve. Similarly, neither [the defendant nurse] nor the other defendants can offer direct evidence as to how the injury occurred.

*Id.* at 207, 314 S.E.2d at 290.

In the current case, however, the record reveals that Mr. Yorke offered direct proof of the cause of his injury. During his trial testimony, Mr. Yorke consistently identified the blood pressure cuff as the cause of his injury. Mr. Yorke testified that after he was admitted to Defendant Hospital on 16 December 2001, the head nurse placed a blood pressure cuff on his left arm. The cuff caused Mr. Yorke's arm to hurt, and he asked Defendant McCaskill-Gainey to loosen the cuff. Defendant McCaskill-Gainey refused to loosen the cuff. Mr. Yorke further testified that later during the evening of 16 December 2001 he again told Defendant McCaskill-Gainey that the cuff was "killing" his arm, but Defendant McCaskill-Gainey did not loosen the cuff. Mr. Yorke again called Defendant McCaskill-Gainey into his room and repeated his request, and Defendant McCaskill-Gainey tightened the

cuff, causing Mr. Yorke the most intense pain he had ever felt. Mr. Yorke testified that the cuff remained on his arm for the next three days, during which time it continued to cause tremendous pain to his arm. When Mr. Yorke's treating physician later asked him how his arm was injured, Mr. Yorke replied, "[b]ecause this blood pressure cuff is too tight." Mr. Yorke's expert witness, Dr. John Stirling Meyer (Dr. Meyer), later explained at trial that Mr. Yorke's arm was injured "[b]ecause [the] blood pressure [cuff] was overinflated and was cutting off arterial and venous circulation to the left arm for more or less four days."

Unlike in *Parks*, where the plaintiff was under general anesthesia at the time her injury occurred and therefore could not offer direct proof of its cause, Mr. Yorke here was fully aware of the cause of his alleged injury. In fact, Mr. Yorke identified his blood pressure cuff as the source of his injury numerous times to medical personnel over the four days that his injury allegedly occurred. When a plaintiff offers direct evidence of the negligence that led to his injury, the doctrine of *res ipsa loquitur* is inapplicable. *See Grigg*, 102 N.C. App. at 333, 401 S.E.2d at 657-58.

Plaintiff argues that there was no direct proof of the cause of Mr. Yorke's injury because Defendant McCaskill-Gainey could not explain the cause of Mr. Yorke's injury, and because Defendants failed to produce the blood pressure cuff machine. Plaintiff's argument is without merit. Even if Defendant McCaskill-Gainey did not identify the cause of Mr. Yorke's injury, Mr. Yorke's own testimony was sufficient to identify the negligently-placed blood pressure cuff as the cause of his injury. Further, regarding the blood pressure cuff machine, Defendants did actually identify and produce the machine that allegedly caused Mr. Yorke's injury, as discussed in Part II.D below. Even had Defendants failed to produce the machine, we again note that Mr. Yorke's own testimony was sufficient to identify the cause of his injury.

Because Mr. Yorke offered direct proof of the cause of his injury, the doctrine of *res ipsa loquitur* was not applicable. The trial court therefore did not err by granting Defendants a directed verdict on Mr. Yorke's *res ipsa loquitur* theory of negligence.

Plaintiff also assigns as error the trial court's denial of Mr. Yorke's request for a jury instruction on the doctrine of *res ipsa loquitur*. A specific jury instruction should be given when "(1) the requested instruction was a correct statement of law and (2) was supported by

the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *Liborio v. King*, 150 N.C. App. 531, 534, 564 S.E.2d 272, 274, *disc. review denied*, 356 N.C. 304, 570 S.E.2d 726 (2002). As discussed above, Mr. Yorke's *res ipsa loquitur* theory of recovery was not supported by the evidence because Mr. Yorke introduced direct proof of the cause of his injury. Therefore, the trial court did not err by denying Mr. Yorke's request for a jury instruction on *res ipsa loquitur*. Plaintiff's assignments of error are overruled.

B.

**[6]** Plaintiff next argues that the trial court erred by excluding testimony by Mr. Yorke's expert witness regarding whether Defendants' failure to prepare an incident report following Mr. Yorke's alleged injury was a violation of the standard of care.

The record in this case reveals that Defendant Hospital has in place a "Quality Assessment Reporting Policy" (the Policy). The Policy provides in part:

> To promote quality patient care and reduce events that might result in injuries to patients . . . it is the policy of Novant Health to have in place (a) an ongoing program of careful monitoring of patient care issues and the environment of patient care, (b) revision of policies and procedures as necessary and appropriate to minimize patient, personnel or visitor injury and to promote quality patient care, and (c) an ongoing and systematic effort to achieve those goals.

> Individual Quality Assessment Reports (QARs) are generated . . . at the direction of the Medical Review Committee for the purposes of peer review or quality of care review. The QARs meeting defined risk criteria are sent to risk management. . . .

> . . . . If [an] event meets the criteria for reporting to Risk Management, a [QAR] is completed according to the facility procedure. The report is then sent to the regional Risk Management office. Further assessment may be appropriate when data trending and/or pattern analysis suggest opportunities for improvement.

Employees of Defendant Hospital are required to complete a QAR following any event that causes injury to a patient. It is undisputed

that no person associated with Mr. Yorke's care completed a QAR during Mr. Yorke's stay at Defendant Hospital.

Prior to trial, Defendants filed a motion *in limine* to preclude Mr. Yorke's counsel from referencing, referring to, or making any claim pertaining to Defendants' failure to prepare a QAR regarding Mr. Yorke's alleged injury. The trial court deferred its ruling until trial. At trial, Mr. Yorke sought to elicit testimony from his expert witness, Dr. Meyer, that Defendants' failure to prepare a QAR constituted a violation of the standard of care. Defendants sought to exclude such testimony on the basis that it was irrelevant to the issue of Defendants' negligence with respect to Mr. Yorke's injury, and on the basis that the existence or nonexistence of a QAR was protected under N.C. Gen. Stat. § 131E-95(b) as the product of a medical review committee. The trial court excluded the testimony. Dr. Meyer later testified on *voir dire* that Defendants violated the standard of care by failing to file a QAR after Mr. Yorke's alleged injury.

We first address the question of whether the trial court erred by excluding Mr. Yorke's evidence on relevancy grounds. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). "Although a trial court's rulings on relevancy are not discretionary and we do not review them for an abuse of discretion, we give them great deference on appeal." *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006), *disc. review denied*, 361 N.C. 223, 642 S.E.2d 712 (2007).

At trial, Mr. Yorke argued that Defendants' failure to complete a QAR was relevant to show breach of the standard of care because Defendants were required to produce such a report pursuant to their own Policy and pursuant to standards issued by the Joint Commission on Hospital Accreditation (JCHA). Therefore, according to Plaintiff, there was "no documentation in [Mr. Yorke's] record documenting that [Mr. Yorke] was injured and the conditions upon which [he] was injured." Similarly, Dr. Meyer testified on *voir dire* that the lack of a QAR related to Mr. Yorke's alleged injury was relevant because it demonstrated a violation of hospital and JCHA policies. Plaintiff argues that had Defendants completed a QAR when Mr. Yorke was allegedly injured on 16 December 2001, Defendants could have discovered Mr. Yorke's injury and could have prevented further injury before Defendants ultimately removed Mr. Yorke's blood pressure cuff four days later.

YORKE v. NOVANT HEALTH, INC.

[192 N.C. App. 340 (2008)]

We conclude that while Defendants' failure to complete a QAR may have been relevant to whether Defendants violated hospital and JCHA policies, the fact that Defendants did not complete a QAR was irrelevant to the issue of whether Defendants breached the standard of care owed to Mr. Yorke. Mr. Yorke offered no evidence from Dr. Meyer or any other source that had a QAR been completed, it would have affected Mr. Yorke's care in any way. Rather, the record demonstrates that QARs were used by Defendant Hospital for broad—based quality control purposes. The Policy gives no indication that a QAR ever becomes part of a patient's medical file, or that a QAR is ever used in conjunction with treating the patient that is the subject of the QAR. Rather, the Policy indicates that QARs are sent to a risk management office where they are reviewed to identify system-wide trends and patterns regarding patient care issues.

Indeed, the trial court recognized this relevancy issue when it addressed Mr. Yorke's counsel at trial:

> [THE COURT]: What you're talking about, [counsel], is something that took place after what your client has filed the lawsuit for. The standard of care that should be the basis of whether or not there's any liability on the [part of Defendant] [H]ospital is whether or not the nurse in the hospital violated the standard of care in the treatment [of Mr. Yorke]. What [Defendants] do after the incident is subsequent and remedial and that simply is not admissible[.]

We agree with the trial court. Defendants' failure to prepare a QAR simply did not make it any more or less probable that Defendants breached the standard of care when applying and monitoring Mr. Yorke's blood pressure cuff. We therefore hold that the trial court did not err by excluding Mr. Yorke's evidence. Because we hold that Mr. Yorke's evidence regarding the QAR report was properly excluded on relevancy grounds, we do not consider whether the trial court erred by also excluding this evidence on grounds of statutory privilege under N.C. Gen. Stat. § 131E-95(b). Plaintiff's assignment of error is overruled.

### C.

Plaintiff next argues that the trial court erred by allowing Defendants' motion for a protective order. As discussed in Part I.B above, our Court does not have jurisdiction to consider Plaintiff's assignment of error on this issue. We are therefore unable to review Plaintiff's argument.

D.

**[7]** Finally, Plaintiff argues that the trial court abused its discretion by denying Mr. Yorke's motion for a new trial under N.C. Gen. Stat. § 1A-1, Rule 59(a). Rule 59(a) provides in part:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:

(1) Any irregularity by which any party was prevented from having a fair trial;

. . . .

(3) Accident or surprise which ordinary prudence could not have guarded against;

. . . .

(9) Any other reason heretofore recognized as grounds for new trial.

N.C. Gen. Stat. § 1A-1, Rule 59(a) (2007). "[A]n appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to . . . order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-85, 290 S.E.2d at 604. "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605.

Plaintiff argues that an irregularity and surprise occurred at trial regarding the blood pressure cuff machine in Mr. Yorke's hospital room. The record demonstrates that during discovery, Mr. Yorke requested from Defendants:

Any and all documents concerning the [blood] pressure cuff, including the complete pressure cuff apparatus and machinery, which was placed on the left arm of [Mr. Yorke] at the time of his injury, including, but not limited to, all of the manufacturer's manuals, training and use instructions, inspection requirements, maintenance records, documentation concerning malfunctioning,

calibration, and records of repairs from the first date of use at [Defendant Hospital] through December 26, 2001.

Defendants responded that there were multiple brands of blood pressure cuff machines in use at Defendant Hospital, and that Defendants were unable to identify the exact machine that was used in Mr. Yorke's room.

At trial, however, the following exchange took place during Defendants' cross-examination of Ms. Scottie Wilson (Ms. Wilson), an operations manager for coronary care at Defendant Hospital:

[DEFENSE COUNSEL]: Were there automatic blood pressure cuff machines on the fifth-floor [coronary care unit] in December 2001?

[MS. WILSON]: Absolutely.

[DEFENSE COUNSEL]: Okay. How many different kinds of bedside automatic blood pressure machines [were there] on the fifth-floor [coronary care unit] in December 2001?

[MS. WILSON]: One.

[DEFENSE COUNSEL]: What brand was that?

[MS. WILSON]: Hewlett-Packard.

Plaintiff argues that Ms. Wilson's testimony indicates that Defendants gave an incorrect response to Mr. Yorke's evidentiary request, and that as a result, "[Mr. Yorke's] counsel were precluded from having the [blood pressure cuff] machine tested and [from] getting expert witnesses to testify regarding the probable malfunctioning of the machine." Plaintiff argues that the trial court should have granted Mr. Yorke a new trial due to this "surprise."

We disagree with Plaintiff's contentions. The record in this case indicates that on 22 September 2005, defense counsel sent a letter to Mr. Yorke's counsel informing them that:

[Defense counsel recently] delivered to your office an operating manual for the blood pressure monitor which we now believe was the kind used on Mr. Yorke in the [coronary care unit] in December 2001. We have that device in our office and will be glad to make it available to you for viewing. Please let me know when you would like to view that machine and we will make the arrangements for you to do so.

Mr. Yorke's counsel responded to defense counsel's letter on 27 September 2005 and indicated that they would come view the blood pressure monitor later that week. Defense counsel sent another letter to Mr. Yorke's counsel on 28 September 2005 asking Mr. Yorke's counsel to "contact our office to set up a time that you . . . can come over to view the monitor." Mr. Yorke's counsel, however, never went to defense counsel's office to view the blood pressure machine and did not attempt to introduce or use the machine at trial.

We do not believe that "the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Worthington*, 305 N.C. at 487, 290 S.E.2d at 605. The record reveals that Ms. Wilson's identification of the type of blood pressure machine used on Mr. Yorke did not come as a "surprise" to Mr. Yorke. Mr. Yorke had been aware for some time that defense counsel had identified the machine at issue, and that defense counsel had made the machine available for Mr. Yorke's inspection. We further note that Mr. Yorke requested and received a spoliation instruction regarding any evidence intentionally withheld or destroyed by Defendants. On these facts, we find no irregularity in Mr. Yorke's trial that would have served as a basis for a new trial under Rule 59(a). We therefore hold that the trial court did not abuse its discretion in denying Mr. Yorke's motion for a new trial. Plaintiff's assignment of error is overruled.

Dismissed in part; affirmed in part.

Chief Judge MARTIN and Judge STEPHENS concur.