WATHA PAINTER GRIGG AND BRENT LYDELL GRIGG v. ROBERT LESTER, M.D., AND GASTON GYNECOLOGY & OBSTETRICS, P.A., A NORTH CAROLINA PROFESSIONAL ASSOCIATION

No. 8827SC1359

(Filed 19 March 1991)

**Physicians, Surgeons, and Allied Professions § 16 (NCI3d)— injury to uterus during caesarean section—res ipsa loquitur inapplicable**

In a medical malpractice action where defendant performed a caesarean section on plaintiff, she suffered an unrepairable tear in the rear wall of the uterus which had to be removed, there was no direct proof of the cause, and defendant was in control of the medical procedure during which the injury occurred, the trial court did not err in failing to instruct the jury on the doctrine of *res ipsa loquitur*, since the injury in question was not of a type that ordinarily does not occur in the absence of some negligence by the physician; *res ipsa loquitur* is based upon common knowledge and experience; and the cause of tears which occur in the uterus during the process of delivering a child by caesarean section is not generally known to laymen.

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 278, 333-335.

GRIGG v. LESTER

[102 N.C. App. 332 (1991)]

**Liability of hospital, physician, or other medical personnel
for death or injury to mother or child caused by improper
procedures during cesarean delivery. 76 ALR4th 1112.**

APPEAL by plaintiffs from judgment entered 16 June 1988 by *Judge Forrest A. Ferrell* in GASTON County Superior Court. Heard in the Court of Appeals 22 August 1989.

*Kelso & Ferguson, by Lloyd T. Kelso, for plaintiff appellants.*

*Kennedy Covington Lobdell & Hickman, by Charles V. Tompkins, Jr., for defendant appellees.*

PHILLIPS, Judge.

The trial of this medical negligence action ended with the jury finding that the injury the femme plaintiff admittedly sustained while defendant obstetrician was undertaking to deliver her child by caesarean section was not caused by his negligence. That it was appropriate to deliver the child surgically, after several hours of unprogressive labor, is conceded — disputed is whether the nature of the injury and the circumstances surrounding it required the court to charge the jury on the doctrine of *res ipsa loquitur*, as plaintiffs requested. The doctrine applies, so our Courts have held many times, when direct proof of the cause of an injury is not available, the instrumentality involved in the accident is under the defendant's control, and the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission. *Snow v. Duke Power Co.*, 297 N.C. 591, 256 S.E.2d 227 (1979); *Parks v. Perry*, 68 N.C. App. 202, 314 S.E.2d 287, *disc. review denied*, 311 N.C. 761, 321 S.E.2d 142 (1984); *Russell v. Sam Solomon Co.*, 49 N.C. App. 126, 270 S.E.2d 518 (1980), *disc. review denied*, 301 N.C. 722, 274 S.E.2d 231 (1981). The injury was an unrepairable tear in the rear wall of the uterus, which had to be removed, there is no direct proof of the cause, and defendant was in control of the medical procedure during which the injury occurred. Thus, the decisive issue is whether the injury is one that does not ordinarily occur in the absence of some negligent act or omission. If it is, the doctrine of *res ipsa loquitur* applies to plaintiffs' case and the court's failure to instruct the jury thereon would require a new trial. For though the failure to charge the doctrine did not prevent the case from going to the jury, plaintiffs' position would have been materially stronger if the doctrine had been charged. *Hyder v. Weilbaecher*, 54 N.C. App. 287, 283 S.E.2d 426 (1981), *disc. review denied*, 304 N.C. 727, 288 S.E.2d 804 (1982).

The direct evidence as to plaintiff's injury is contained in an explanation that Dr. Lester gave to Mrs. Grigg and his testimony as an adverse witness. His explanation of her injury was as follows:

> That there had been complications and that I had had an abnormality of the uterus which is called like a Bandl's ring around the baby's head, and when they went in, they couldn't get the baby through the ring and couldn't get him out of the ring and in the process of trying to deliver the baby, it had torn the wall of the uterus away and they had to, you know, do the hysterectomy.

His testimony was to the following effect: After making the customary transverse incision across the front part of the uterus, he reached inside to bring the baby's head up out of the pelvis, but was unable to dislodge the baby's head from the lower part of the uterus; he worked his fingers to the bottom of the baby's head and had a nurse to push through the vagina with her hand to try to break the suction on the head; while continuing to work his fingers back and forth underneath and on the top of the baby's head, it suddenly came free but suddenly disappeared into the plaintiff's abdomen through a tear in the rear wall of the uterus; after delivering the baby, he and an obstetrician who assisted in the procedure determined that the tear extended across almost the entire back wall of the uterus and could not be repaired; he could not explain why the tear occurred; he had not had a similar experience in his practice and knew of no obstetrician who had.

The only other pertinent evidence concerning the injury is contained in the hospital record and the opinion testimony based thereon. *Plaintiffs' obstetrical expert*, who expressed the opinion that defendant was negligent in several respects, opined or testified as follows: The tear across the rear of the uterus was caused by defendant's hand in attempting to forcibly move the baby's head from the uterus; there was no Bandl's ring, no constriction ring; it was a traumatic tear that occurred after he began manipulating the baby's head in an attempt to deliver the child; after failing in his attempts to pass his hand behind the head to act as a shoehorn he should have taken some other step to push the head up, but he just kept trying to move the head up towards the back of the womb with his hand; the injury is uncommon; he had never seen or heard of one like it; it is not an inherent risk of a caesarean section; the instrumentality that caused the

injury was Dr. Lester's hand; in such situations the obstetrician must be gentle because the baby's and mother's tissues in the area are fragile; "[i]t would take a fair amount of force to push your hand through the uterus, although the back part of the uterus is thinned out, it's still a muscle and it would take a fair amount of force . . . It doesn't happen accidentally. One would have to persist in pushing against the back of the uterus, which one should never do, to tear it"; attempting to deliver the head by using his hand in the lower part of the uterus after it became obvious it was not going to work was inappropriate. One of *defendants' experts* expressed the opinion that because of the position of the uterus and the child the uterus could not have been torn as it was by Dr. Lester pushing with his hand.

We cannot find that the injury in question is of a type that ordinarily does not occur in the absence of some negligence by the physician, and therefore hold that the *res ipsa loquitur* doctrine does not apply to this case and the court's failure to charge thereon was not error. This is our decision because *res ipsa loquitur* is based upon common knowledge and experience, Prosser and Keeton, *The Law of Torts*, Sec. 39, pp. 244-251 (5th ed. 1984), and in our opinion as of yet the cause of tears that occur in the uterus during the process of delivering a child by caesarean section is not generally known to laymen. Any layman, we think, could properly infer from the nonopinion testimony presented in this case that the tear resulted from force applied by Dr. Lester—but in the absence of testimony by someone knowledgeable and expert in such matters, a layman would have no basis for concluding that the force exerted was either improper or excessive. The common knowledge, experience and sense of laymen qualifies them to conclude that some medical injuries are not likely to occur if proper care and skill is used; included, *inter alia*, are injuries resulting from surgical instruments or other foreign objects left in the body following surgery and injuries to a part of the patient's anatomy outside of the surgical field. *See Mitchell v. Saunders*, 219 N.C. 178, 13 S.E.2d 242 (1941); *Parks v. Perry, supra*. But the cause or causes of tears in the uterus during a caesarean section is neither so apparent nor well known as the cause of those and similar injuries.

Plaintiffs' other contentions, even if they had merit, are not about matters that would justify a new trial, as counsel candidly conceded in arguing the appeal, and discussing them would serve no purpose.

No error.

Judges WELLS and PARKER concur.