LINDA M. ROBINSON AND FRANK ROBINSON, PLAINTIFFS
v.
DUKE UNIVERSITY HEALTH SYSTEMS, INC. D/B/A DUKE UNIVERSITY MEDICAL
CENTER; DUKE UNIVERSITY AFFILIATED PHYSICIANS, INC.; CHRISTOPHER
MANTYH, MD; ERICH S. HUANG, MD; MAYUR B. PATEL, MD; LEWIS HODGINS, MD;
JANE AND JOHN DOE, DEFENDANTS

No. COA12-1239

Filed 20 August 2013

1. **Civil Procedure—motion to dismiss—improperly overruling previous order**

    The trial court's summary judgment order in a medical malpractice case improperly overruled a previous order denying defendants' motion to dismiss on the issue of plaintiffs' compliance with N.C.G.S. § 1A-1, Rule 9(j). One judge may not reconsider the legal conclusions of another judge. Thus, Judge Hudson's order granting summary judgment in favor of defendants on the legal question of plaintiffs' compliance with the pertinent provisions of Rule 9(j) was vacated.

2. **Medical Malpractice—Rule 9(j) certification—res ipsa loquitur doctrine**

    The trial court did not err in a medical malpractice case by concluding that plaintiffs' complaint complied with the pertinent provisions of N.C.G.S. § 1A-1, Rule 9(j). No bar existed to plaintiffs' assertion of the *res ipsa loquitur* doctrine, and plaintiffs' complaint and forecast of evidence both satisfied the requirements of Rule 9(j)(3) and survived defendants' motion for summary judgment on that issue.

**3. Medical Malpractice—elements—applicable standard of care—summary judgment improper**

The trial court erred in granting summary judgment in favor of defendants as to plaintiffs' claim for medical negligence against Dr. Mantyh and Dr. Huang. Plaintiffs presented sufficient evidence to satisfy all elements of a medical malpractice claim against Dr. Mantyh. Further, plaintiffs presented sufficient evidence that Dr. Huang breached the applicable standard of care.

**4. Medical Malpractice—vicarious liability of hospital—doctor employee—apparent agent**

The trial court erred in granting summary judgment in favor of defendants as to plaintiffs' claim for medical negligence against defendant Duke University Health Systems (DUHS). Dr. Huang was admittedly employed by DUHS at the time of the alleged medical negligence, and plaintiffs' evidence sufficiently demonstrated that Dr. Mantyh was an apparent agent of DUHS.

**5. Damages and Remedies—punitive damages—summary judgment proper**

The trial court did not err in a medical malpractice case by granting summary judgment in favor of defendants as to plaintiffs' claim for punitive damages. Plaintiffs' complaint and forecast of evidence failed to provide any facts that defendants' conduct in causing the patient's injurious condition was willful, wanton, malicious, or fraudulent.

Judge CALABRIA concurring in result only.

Judge STEELMAN concurring in result in separate opinion.

Appeal by plaintiffs from judgment entered 15 June 2012 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 8 May 2013.

*Willcox, Buyck & Williams, P.A., by Reynolds Williams, pro hac vice; and Thomas & Farris, by Albert S. Thomas and Allen G. Thomas, for plaintiff appellants.*

*McGuireWoods LLP, by Mark E. Anderson, Heather R. Wilson, and Monica E. Webb, for defendant appellees.*

McCULLOUGH, Judge.

Plaintiffs Linda M. Robinson ("Robinson") and her husband, Frank Robinson (collectively, "plaintiffs") appeal from an order of the trial court granting summary judgment in favor of defendants Duke University Health Systems, Inc. d/b/a Duke University Medical Center ("DUHS"); Duke University Affiliated Physicians, Inc. ("DUAP"); Christopher Mantyh, M.D. ("Dr. Mantyh"); Erich S. Huang, M.D. ("Dr. Huang"); Mayur B. Patel, M.D. ("Dr. Patel," collectively with the aforementioned defendants, "defendants"); and Lewis Hodgins, M.D. ("Dr. Hodgins), and dismissing their medical malpractice action with prejudice. On appeal, plaintiffs contend the trial court erred in granting summary judgment in favor of defendants because (1) their complaint stated a cause of action for medical negligence under the common law theory of *res ipsa loquitur*, and therefore their complaint complied with Rule 9(j)(3) of the North Carolina Rules of Civil Procedure for medical malpractice actions; and (2) they presented evidence establishing each and every element of a medical negligence claim, thereby creating a genuine issue of fact for trial. After careful review, we (1) affirm the trial court's order dismissing plaintiffs' action against defendants DUAP, Dr. Patel, and Dr. Hodgins and dismissing plaintiffs' punitive damages claim; (2) vacate the trial court's order granting summary judgment in favor of defendants on the basis of plaintiffs' compliance with Rule 9(j); and (3) reverse the trial court's award of summary judgment in favor of defendants Dr. Mantyh, Dr. Huang, and DUHS. We remand the matter to the trial court for further proceedings consistent with this opinion.

## I. Background

On 12 March 2008, Robinson was admitted to Duke University Medical Center with a diagnosis of severe constipation predominant irritable bowel syndrome and colonic inertia. After considering her treatment options, Robinson elected to undergo a subtotal/abdominal colectomy, a surgical procedure to remove a portion of the small intestine and reattach the intestine to the rectum using a surgical stapler. Dr. Mantyh, Chief of Gastrointestinal and Colorectal Surgery at the hospital, assisted by Dr. Huang, a general surgery resident at the hospital, performed Robinson's surgery.

On the day following her surgery, Robinson reported loose stool in her bed, and overnight, she reported bloody fluid passing from her vagina. Upon evaluation, it was discovered that Robinson's small intestine had been connected to her vagina, rather than to her rectum, during her surgical procedure. As a result, on 14 March 2008, Dr. Mantyh and Dr. Huang performed a second surgery on Robinson to correct the misconnection. The second surgery was successful in repairing the communication

between Robinson's small intestine and her vagina. Robinson was subsequently discharged from the hospital on 27 March 2008.

On 29 April 2008, Robinson presented to Dr. Mantyh for follow-up outpatient care, at which time she had new complaints including difficulty speaking, left-sided weakness, erratic hand movements, and blurry vision. Robinson reported that her symptoms began following her second surgery and continued to worsen with time. Dr. Mantyh ordered that Robinson be admitted to the hospital, where she was diagnosed with conversion disorder, a psychiatric disorder related to recent conflict or stress. Robinson was subsequently discharged from the hospital on 2 May 2008.

On 10 March 2011, plaintiffs filed a complaint for medical negligence against all defendants. Plaintiffs' complaint relies on the common law theory of *res ipsa loquitur*. Plaintiffs' complaint also sought punitive damages. On 19 April 2011, all defendants moved to dismiss plaintiffs' action pursuant to Rules 9(j), 12(b)(2), 12(b)(5), 12(b)(6), and 41(b) of the North Carolina Rules of Civil Procedure. On 1 July 2011, the trial court denied defendants' motion to dismiss as to all defendants except Dr. Hodgins, as to whom plaintiffs' action was dismissed with prejudice. Defendants then filed an answer to plaintiffs' complaint on 26 July 2011.

The parties proceeded to conduct discovery, during which plaintiffs identified Joshua Braveman, M.D. ("Dr. Braveman"), an experienced colorectal surgeon, as an expert to testify regarding the care Robinson received from defendants during her surgeries. On 27 April 2012, defendants filed a motion for summary judgment, asserting that (1) plaintiffs had failed to comply with Rule 9(j)(1) of the North Carolina Rules of Civil Procedure for medical malpractice claims, (2) the doctrine of *res ipsa loquitur* did not apply to plaintiffs' action, and (3) plaintiffs could not forecast evidence to satisfy each and every element of their medical negligence claim. The trial court held a hearing on defendants' motion on 12 June 2012, and a written order granting summary judgment in favor of defendants and dismissing plaintiffs' action with prejudice was entered by the trial court on 15 June 2012. On 16 July 2012, plaintiffs entered timely written notice of appeal from the trial court's 15 June 2012 order.[1]

On 12 September 2012, defendants filed a motion with the trial court pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure seeking an advisory opinion and/or a supplemental order with findings

---

1. Plaintiffs expressly do not appeal the grant of summary judgment in favor of DUAP or Dr. Patel, and therefore, plaintiffs' action stands dismissed as against those defendants.

ROBINSON v. DUKE UNIV. HEALTH SYS., INC.

[229 N.C. App. 215 (2013)]

of fact and conclusions of law to aid our review of plaintiffs' present appeal. Defendants then moved this Court for a stay of appellate proceedings until the trial court could consider their Rule 60(b) motion. This Court granted defendants' motion on 5 November 2012, ordering the case remanded to the trial court for an evidentiary hearing and the entry of findings of fact and conclusions of law thereon. Thereafter, on 14 November 2012, the trial court held a hearing and entered a "Supplemental Order and/or Advisory Opinion," including findings of fact and conclusions of law supporting the grant of summary judgment in favor of defendants.

## II. Standard of Review

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). "The trial court must consider the evidence in the light most favorable to the non-moving party." *Crocker v. Roethling*, 363 N.C. 140, 142, 675 S.E.2d 625, 628 (2009). "The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact." *Forbis*, 361 N.C. at 524, 649 S.E.2d at 385. We review a trial court's order granting summary judgment *de novo*. *Id*. "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

## III. Compliance with Rule 9(j)

### A. Trial Court's Inconsistent Rulings on Rule 9(j) Compliance

[1] We first address plaintiffs' contention that the trial court's summary judgment order overruled its previous order denying defendants' motion to dismiss on the issue of plaintiffs' compliance with Rule 9(j).

On 19 April 2011, defendants moved to dismiss plaintiffs' action pursuant to Rules 9(j), 12(b)(2), 12(b)(5), 12(b)(6), and 41(b) of the North Carolina Rules of Civil Procedure. Defendants argued that plaintiffs' complaint failed to comply with Rule 9(j)(1) and did not meet "the well[-]established pleading requirements under North Carolina law so as to establish negligence under the existing common law doctrine of *res ipsa* and therefore fails to fall within the exception set forth in Rule 9(j) (3)." In their memorandum supporting their motion to dismiss, defendants presented extensive argument contending that the doctrine of *res*

*ipsa loquitur* does not apply to plaintiffs' action because (1) plaintiffs failed to allege either that a surgical instrument or foreign object was left in Robinson's body following surgery or that her injury was to an area far away from and completely unrelated to the zone of surgery; (2) plaintiffs alleged the proximate cause of Robinson's injury in their complaint, rather than alleging that no proof of the cause of Robinson's injury is available; (3) laypersons lack the specialized medical knowledge necessary to infer that the injury Robinson sustained during or as a result of her colectomy procedure is a type that does not ordinarily occur in the absence of negligence; and (4) plaintiffs failed to allege that the instrumentality causing the alleged injury was under defendants' exclusive control.

On 1 July 2011, Judge Robert Hobgood ("Judge Hobgood") denied defendants' motion to dismiss. In his written order, Judge Hobgood noted the parties' arguments as follows:

> The argument of all Defendants is that the Plaintiffs have failed to abide by Rule 9(j) of the North Carolina Rules of Civil Procedure because the Complaint contains no allegation that an expert witness has been appropriately consulted or identified and described as required by Rule 9(j)(1). Plaintiffs urge that the Complaint sets forth facts which establish negligence under the common law doctrine of *res ipsa loquitur*.

Judge Hobgood found as fact that plaintiffs' complaint

> alleges that the Defendants connected Linda Robinson's small intestine to her vagina rather than to her anus during a surgery, thereby injuring her, and that such acts, by their very nature, raise a presumption of negligence on the part of the Defendants. The Complaint alleges that all adult persons know the elementary anatomy of the body and that it requires neither sophistication, training, nor expertise to understand the factual issues raised by the Complaint. The Defendants argue that the factual circumstances described above did not fall within certain parameters which, the Defendants contend, narrowly prescribe the application of the doctrine of *res ipsa loquitur*.

Judge Hobgood then made the following conclusion of law:

> Applying the applicable law to the allegations in the Complaint, the Complaint alleges facts giving notice of

negligence under the existing common law doctrine of *res ipsa loquitur.* As a result[,] the Defendants' Motion to Dismiss on the basis of Rules 9(j), 12(b)(6), and 41(b) of the North Carolina Rules of Civil Procedure must be denied.

Following discovery, on 27 April 2012, defendants filed a motion for summary judgment, which was granted by Judge Orlando Hudson ("Judge Hudson") on 15 June 2012. In his supplemental order/advisory opinion supporting the grant of summary judgment in favor of defendants, Judge Hudson made certain findings of fact that improperly resolved contested issues of fact, including a finding of fact that (1) Robinson "was diagnosed with a fistula on March 14, 2008, and a reoperation was performed[;]" (2) "[i]n their Complaint, Plaintiffs identify the alleged cause of Mrs. Robinson's injury: 'the botched colectomy is a proximate cause of the Plaintiffs' injury[;]' " and (3) "Dr. Braveman concedes that the injury at issue can occur in the absence of negligence . . . and confirms that a layperson does not have the skill or knowledge to judge the conduct at issue in this case." Judge Hudson then made the following conclusions of law:

31. The doctrine of *res ipsa loquitur* is not applicable to this case, where the evidence shows: a) this is a medical malpractice case; b) this case does not involve retained surgical instruments or foreign bodies; c) the alleged injury did not occur in an area that was far away from and completely unrelated to the zone of surgery; d) Plaintiffs offered proof of the cause of the injuries complained of; e) Plaintiff's injury is the type that can and does occur in the absence of negligence.

. . . .

33. Plaintiffs' Complaint should be dismissed as to all Defendants pursuant to Rule 9(j) because: a) this is a medical malpractice case which requires a pre-filing expert review; b) the Complaint lacks the required Rule 9(j) certification; c) Plaintiffs did not obtain the required Rule 9(j) expert review prior to filing the Complaint; d) the applicable statute of [limitations] expired on March 12, 2011; and e) Plaintiffs did not file a Complaint that complied with Rule 9(j) prior to the expiration of the statute of limitations.

Our case law is clear that "one judge may not reconsider the legal conclusions of another judge." *Adkins v. Stanly Cnty. Bd. of Educ.*, 203 N.C. App. 642, 646, 692 S.E.2d 470, 473 (2010). The only limited exception to this rule is for "interlocutory orders addressed to the discretion of the trial court[.]" *Id.* Here, however, Judge Hobgood's order determining that plaintiffs' complaint properly complied with Rule 9(j)(3) was not a ruling addressed to his discretion. Rather, it was a ruling as a matter of law:

> In considering whether a plaintiff's Rule 9(j) statement is supported by the facts, a court must consider the facts relevant to Rule 9(j) and apply the law to them. In such a case, this Court does not inquire as to whether there was any question of material fact, nor do we view the evidence in the light most favorable to the plaintiff. Rather, our review of Rule 9(j) compliance is *de novo, because such compliance clearly presents a question of law.*

*Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 255-56, 677 S.E.2d 465, 477 (2009) (emphasis added) (internal quotation marks and citations omitted).

In granting summary judgment in favor of defendants in the present case, Judge Hudson ruled contrary to Judge Hobgood's prior ruling on the same legal issue to dismiss: whether plaintiffs' complaint properly complied with the pertinent provisions of Rule 9(j). Judge Hudson was without authority to reconsider Judge Hobgood's determination on that issue. Although Judge Hudson stated in his supplemental order/advisory opinion that he was "not reviewing or attempting to overrule the findings and/or order entered by Judge [Hobgood] on July 1, 2011[,]" citing the different standards for consideration of a Rule 12(b)(6) motion and a Rule 56 motion, Judge Hudson did precisely the opposite. While we recognize that "[t]he trial court's standards for a Rule 12(b)(6) motion to dismiss and a motion for summary judgment are different and present separate legal questions[,]" *Adkins*, 203 N.C. App. at 647, 692 S.E.2d at 473, one trial court judge is nonetheless powerless to make a contrary ruling on an issue of law already resolved by a prior trial court judge's ruling, despite the denomination of the order as one denying a motion to dismiss or granting summary judgment. *See id.* at 647-52, 692 S.E.2d at 473-76 (vacating order granting summary judgment in favor of defendants on legal issue of whether plaintiff's complaint touched on a matter of public concern where previous ruling by another trial court judge denied defendants' motion to dismiss after considering same legal question and reaching contradictory conclusion).

In comparing the two orders side by side in the present case, as well as defendants' arguments on the issue in both instances, it is clear that Judge Hudson granted summary judgment in favor of defendants in light of his conclusion that the doctrine of *res ipsa loquitur* was not applicable to the facts alleged and evidence presented by plaintiffs and therefore plaintiffs' complaint failed to comply with the pertinent provisions of Rule 9(j) – the opposite conclusion reached by Judge Hobgood in his prior order denying defendants' motion to dismiss on the same legal issue. Accordingly, we must vacate Judge Hudson's order granting summary judgment in favor of defendants on the legal question of plaintiffs' compliance with the pertinent provisions of Rule 9(j). *See id.*

### B. *Plaintiffs' Compliance with Rule 9(j); Application of Res Ipsa Loquitur*

[2] We next address the propriety of Judge Hobgood's conclusion that the doctrine of *res ipsa loquitur* is applicable to the facts alleged in this case, and therefore, plaintiffs' complaint complied with the pertinent provisions of Rule 9(j) of the North Carolina Rules of Civil Procedure for medical malpractice actions.

Rule 9(j) provides in pertinent part:

> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
>
> > (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
> >
> > (2) . . . or
> >
> > (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of *res ipsa loquitur*.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2011). "Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations

do not facially comply with the rule's heightened pleading requirements." *Barringer*, 197 N.C. App. at 255, 677 S.E.2d at 477. "Additionally, this Court has determined 'that even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate.' " *Id.* (quoting *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008)).

In the present case, plaintiffs' complaint is void of any specific assertion that Robinson's medical care was reviewed by an expert who would testify that the medical care failed to comply with the applicable standard of care; thus, the pleading does not meet the heightened pleading requirements of Rule 9(j)(1), as defendants contend. However, plaintiffs assert that their medical negligence complaint complied with Rule 9(j)(3) by stating a cause of action for negligence under the doctrine of *res ipsa loquitur*. "Accordingly, we consider de novo whether [plaintiffs'] complaint alleges facts establishing negligence under the doctrine of *res ipsa loquit[u]r* pursuant to Rule 9(j)(3)." *Rowell v. Bowling*, 197 N.C. App. 691, 696, 678 S.E.2d 748, 751 (2009).

"*Res ipsa loquitur* is a doctrine addressed to those situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of [the] defendant." *Bowlin v. Duke Univ.*, 108 N.C. App. 145, 149, 423 S.E.2d 320, 322 (1992). The doctrine of *res ipsa loquitur*, " 'in its distinctive sense, permits negligence to be inferred from the physical cause of an [injury], without the aid of circumstances pointing to the responsible human cause. Where this rule applies, evidence of the physical cause or causes of the [injury] is sufficient to carry the case to the jury on the bare question of negligence.' " *Diehl v. Koffer*, 140 N.C. App. 375, 377-78, 536 S.E.2d 359, 362 (2000) (quoting *Harris v. Mangum*, 183 N.C. 235, 237, 111 S.E. 177, 178 (1922)).

"The doctrine of *res ipsa loquitur* applies when '(1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident [was] under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission.' " *Alston v. Granville Health System*, ___ N.C. App. ___, ___, 727 S.E.2d 877, 879 (quoting *Grigg v. Lester*, 102 N.C. App. 332, 333, 401 S.E.2d 657, 657–58 (1991)), *disc. review dismissed*, ___ N.C. ___, 731 S.E.2d 421 (2012). "For the doctrine to apply in a medical malpractice claim, a plaintiff must allege facts from which a layperson could infer negligence by the defendant based on common knowledge and ordinary human experience." *Smith v. Axelbank*, ___ N.C. App. ___, ___, 730 S.E.2d 840, 843 (2012); *see also Diehl*, 140 N.C.

App. at 378, 536 S.E.2d at 362 ("[A]pplicability of the *res ipsa loquitur* doctrine depends on whether[,] as a matter of common experience[,] it can be said the [injury] could have happened without dereliction of duty on the part of the person charged with culpability." (internal quotation marks, citation, and emphasis omitted)). " 'Therefore, in order for the doctrine to apply, not only must plaintiff have shown that [the] injury resulted from defendant's [negligent act], but plaintiff must [be] able to show — without the assistance of expert testimony — that the injury was of a type not typically occurring in absence of some negligence by defendant.' " *Howie v. Walsh*, 168 N.C. App. 694, 698, 609 S.E.2d 249, 252 (2005) (alterations in original) (quoting *Diehl*, 140 N.C. App. at 378, 536 S.E.2d at 362); *see also Hayes v. Peters*, 184 N.C. App. 285, 287-88, 645 S.E.2d 846, 848 (2007) ("In order for the doctrine to apply, an average juror must be able to infer, through his common knowledge and experience and without the assistance of expert testimony, whether negligence occurred.").

Our Courts have consistently found that "*res ipsa loquitur* is inappropriate in the usual medical malpractice case, where the question of injury and the facts in evidence are peculiarly in the province of expert opinion." *Bowlin*, 108 N.C. App. at 149-50, 423 S.E.2d at 323; *see also Rowell*, 197 N.C. App. at 696, 678 S.E.2d at 751 ("Normally, in [medical malpractice] actions, both the standard of care and its breach must be established by expert testimony." (internal quotation marks and citation omitted)). However,

> [t]he common knowledge, experience and sense of laymen qualifies them to conclude that some medical injuries are not likely to occur if proper care and skill is used; included, *inter alia*, are injuries resulting from surgical instruments or other foreign objects left in the body following surgery and injuries to a part of the patient's anatomy outside of the surgical field.

*Grigg*, 102 N.C. App. at 335, 401 S.E.2d at 659.

> Application of *res ipsa* in medical malpractice actions has received special attention, resulting in what our Supreme Court has characterized as a somewhat restrictive application of the doctrine. The precautions in applying *res ipsa* to a medical malpractice action stem from an awareness that the majority of medical treatment involves inherent risks which even adherence to the appropriate standard of care cannot eliminate. This, coupled with the scientific and technical nature of medical treatment,

renders the average juror unfit to determine whether [a] plaintiff's injury would rarely occur in the absence of negligence. Unless the jury is able to make such a determination[, a] plaintiff clearly is not entitled to the inference of negligence *res ipsa* affords.

*Schaffner v. Cumberland County Hosp. System*, 77 N.C. App. 689, 692, 336 S.E.2d 116, 118 (1985) (internal quotation marks and citations omitted). "The reason given for the doctrine's limited availability is the principle that a health care provider is not an insurer of results[.]" *Parks v. Perry*, 68 N.C. App. 202, 206, 314 S.E.2d 287, 289 (1984).

Nonetheless, our Supreme Court has long recognized that

where proper inferences may be drawn by ordinary men from proved facts which give rise to *res ipsa loquitur* without infringing this principle, there should be no reasonable argument against the availability of the doctrine in medical and surgical cases involving negligence, just as in other negligence cases, where the thing which caused the injury does not happen in the ordinary course of things, where proper care is exercised.

*Mitchell v. Saunders*, 219 N.C. 178, 182, 13 S.E.2d 242, 245 (1941); *see also Parks*, 68 N.C. App. at 206, 314 S.E.2d at 289. "Once plaintiff's proof has addressed these concerns, . . . no bar to application of *res ipsa* in medical malpractice actions exists." *Schaffner*, 77 N.C. App. at 692, 336 S.E.2d at 118.

Because "the *res ipsa loquitur* doctrine is only applicable where 'there is no direct proof of the cause of the injury available to the plaintiff[,]' " *Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 352, 666 S.E.2d 127, 135 (2008) (quoting *Parks*, 68 N.C. App. at 207, 314 S.E.2d at 290), "where evidence constituting direct proof of the cause of injury is presented, 'the doctrine of *res ipsa loquitur* [is] not applicable.' " *Alston*, ___ N.C. App. at ___, 727 S.E.2d at 880 (alteration in original) (quoting *Yorke*, 192 N.C. App. at 353, 666 S.E.2d at 136). In addition, when evaluating whether the injury is of a type that does not ordinarily occur in the absence of negligence, our Court has applied a twofold test in medical malpractice cases: "(1) the injurious result must rarely occur standing alone and (2) the result must not be an inherent risk of the operation." *Parks*, 68 N.C. App. at 206, 314 S.E.2d at 290.

In the present case, defendants argue *res ipsa loquitur* is not applicable in Robinson's case because (1) the injury that Robinson sustained

does not involve either of the two circumstances for which the application of *res ipsa* has been expressly approved by this Court; (2) Robinson's colectomy procedure is outside the knowledge and experience of laymen, thereby requiring expert testimony to show that her injury could not have occurred in the absence of negligence; and (3) plaintiffs offered direct proof of the cause of Robinson's injury. We address these arguments in turn.

### 1. Limitation of Circumstances in Which Doctrine Applies

Relying on this Court's opinion in both *Grigg*, 102 N.C. App. 332, 401 S.E.2d 657, and *Hayes*, 184 N.C. App. 285, 645 S.E.2d 846, defendants contend that "our courts have applied *res ipsa loquitur* to medical malpractice cases in only two types of cases: 1) where injuries result from surgical instruments or other foreign objects left in the body following surgery; and 2) where there is an injury to an area far away from and completely unrelated to the zone of surgery." Defendants assert that "[i]mportantly, these are the only two scenarios in which North Carolina courts determined that a layperson's common knowledge would permit an inference of negligence." Defendants urge that because the present case does not involve either of these two circumstances, *res ipsa loquitur* is inapplicable.

In *Hayes*, we noted that "[t]his Court has encouraged 'trial courts to remain vigilant and cautious about providing *res ipsa loquitur* as an option for liability in medical malpractice cases other than in those cases where it has been expressly approved.' " *Id.* at 288, 645 S.E.2d at 848 (quoting *Howie*, 168 N.C. App. at 699, 609 S.E.2d at 252). In support of this statement, we cited this Court's opinion in *Grigg* as "noting that the doctrine of *res ipsa loquitur* is approved in two limited circumstances: (1) injuries resulting from surgical instruments or other foreign objects left in the body following surgery; and (2) injuries to a part of the patient's anatomy outside of the surgical field." *Hayes*, 184 N.C. App. at 288, 645 S.E.2d at 848 (citing *Grigg*, 102 N.C. App. at 335, 401 S.E.2d at 659).

However, any limitation of the application of *res ipsa loquitur* to only these two types of medical malpractice cases is not supported by the plain language of our case law. Although *Hayes* cautions trial courts in applying *res ipsa loquitur* in medical malpractice actions involving injuries other than those two categories, *Hayes* does not hold that these two types of cases are the only ones in which *res ipsa loquitur* can apply. To the contrary, the plain language of *Grigg*, cited by *Hayes*, states:

The common knowledge, experience and sense of laymen qualifies them to conclude that some medical injuries are not likely to occur if proper care and skill is used; included, *inter alia*, are injuries resulting from surgical instruments or other foreign objects left in the body following surgery and injuries to a part of the patient's anatomy outside of the surgical field.

*Grigg*, 102 N.C. App. at 335, 401 S.E.2d at 659 (emphasis added). Indeed, our Supreme Court has long held that "where proper inferences may be drawn by ordinary men from proved facts which give rise to *res ipsa loquitur* . . . , there should be no reasonable argument against the availability of the doctrine in medical and surgical cases involving negligence[.]" *Mitchell*, 219 N.C. at 182, 13 S.E.2d at 245. Thus, defendants' argument that *res ipsa* is inapplicable in the present case because it does not involve either a foreign object left in the body following surgery or an injury to an area far away from and completely unrelated to the zone of surgery is without merit.

## 2. Requirement of Expert Testimony

Defendants further argue that Robinson's medical treatment at issue in the present case involved a colectomy, "a complex surgical procedure." Defendants contend that "[a]verage jurors do not have knowledge to enable them to identify and distinguish internal anatomy such as the vaginal cuff, colon, small intestines, adhesions and rectum as it would appear through a laparoscope." In addition, defendants argue that "[l]aymen have no experience in dissecting adhesions, removal of the colon, or creating an anastomosis (connection) between the small bowel and rectum[,]" and that "[a]verage jurors are not familiar with using a surgical stapler (EEA), including knowledge of how to properly insert, align, and/or use it to create a connection between body tissues." Accordingly, defendants urge that expert testimony is necessary to determine whether negligence occurred in the present case, thereby precluding the application of *res ipsa loquitur*. We disagree.

As plaintiffs' complaint asserts, it is common knowledge and experience that intestines are meant to connect with the anus, not the vagina, even following a surgical procedure to correct a bowel problem. Likewise, as plaintiffs' complaint asserts, it requires no expert testimony to understand that feces are not meant to be excreted from the vagina and that such an injury does not ordinarily occur in the absence of a negligent act or omission during a surgical procedure. Despite defendants' attempts to employ medical terminology to the issue, the simple fact is

ROBINSON v. DUKE UNIV. HEALTH SYS., INC.

[229 N.C. App. 215 (2013)]

that following her surgical procedure, Robinson's intestine was left connected to her vagina, causing her to excrete feces through her vagina. *Cf. Hayes*, 184 N.C. App. at 288, 645 S.E.2d at 848 (expert testimony necessary for the average juror to determine whether a stroke from air emboli during an esophagastroduodenoscopy surgical procedure was an injury that would not normally occur in the absence of negligence); *Howie*, 168 N.C. App. at 698-99, 609 S.E.2d at 252 (expert testimony necessary for a layperson to determine whether the defendant dentist used excessive or improper force in employing a "Cryers elevator" instrument during a wisdom tooth extraction resulting in nerve damage and a fractured jaw); *Bowlin*, 108 N.C. App. at 149, 423 S.E.2d at 322-23 (layman would have no basis for concluding that defendant was negligent in causing injury to plaintiff's sciatic nerve while extracting marrow during a bone marrow harvest procedure); *Grigg*, 102 N.C. App. at 335, 401 S.E.2d at 659 (expert testimony necessary for a layman to determine whether the force exerted by the defendant obstetrician during cesarean section child delivery was either improper or excessive so as to cause a uterine tear). Contrary to defendants' assertion, we find the circumstances presented in *Hayes, Howie, Bowlin,* and *Grigg* distinguishable from those presented in the present case. In each of those four cases, an understanding of the procedures involved and the proper techniques to be employed during those procedures was necessary for a determination by the jury as to whether the injury at issue in each case could have occurred in the absence of some negligence by the defendant health care provider. Here, however, although Robinson underwent a colectomy procedure, an understanding of the requisite techniques employed during the procedure is not required for a layman to determine that Robinson's small intestine should not have been connected to her vagina during the procedure and that such an anatomical result following surgery does not normally occur in the absence of negligence.

In further support of their contention that expert testimony is required for an understanding of the procedure and the injury involved in this case, defendants point to Dr. Braveman's testimony that he reviewed Robinson's medical records and relied on his own expertise in the field of colorectal surgery to confirm that negligence occurred during Robinson's colectomy. Defendants also highlight that Dr. Braveman acknowledged that a "rectovaginal fistula" can occur in the absence of negligence following a colectomy procedure. Nonetheless, Dr. Braveman also testified that an injury such as the one Robinson sustained from her original surgical procedure *does not occur in the absence of some negligence by the surgeon* ninety-five percent of the time. In addition, Dr. Braveman testified that passing stool through the vagina immediately following surgery

is rare, although it can occur, and raises a strong suspicion that the surgery was done improperly. Dr. Braveman further testified that Robinson's injurious condition, in having her intestine directly connected to her vagina, is never a risk of a colectomy procedure. Thus, plaintiffs' forecast of evidence sufficiently demonstrates (1) that Robinson's injury — that her small intestine was attached to her vagina rather than to her rectum causing feces to pass through her vagina, rarely, if ever, occurs standing alone, outside of negligence during the operation which was being performed, and (2) that such a result is not an inherent risk of the operation. *See Schaffner*, 77 N.C. App. at 692, 336 S.E.2d at 118.

The fact that plaintiffs' proffer of expert testimony describes Robinson's procedure, the anatomy involved, and the injurious result does not detract from the fact that a layperson can understand, without the assistance of such expert testimony, that following a procedure to remove a portion of the intestine or colon, a patient's intestine should not be reattached to her vagina, resulting in the passing of feces through the vagina, if the procedure was done properly. Indeed, Dr. Braveman agreed that a layperson needs no special expertise to understand that the small intestine being connected to the vagina is not anatomically correct. "When, as here, the facts can be evaluated based on common experience and knowledge, expert testimony is not required." *Schaffner*, 77 N.C. App. at 692, 336 S.E.2d at 118.

### 3. Direct Proof of Cause of Injury

Finally, defendants argue that because plaintiffs offered direct proof of Robinson's injury, the doctrine of *res ipsa loquitur* is inapplicable in the present case. Defendants state that plaintiffs' complaint contends that " 'the botched colectomy is a proximate cause of the Plaintiffs' injury,' and that Defendants were negligent by attaching 'Linda Robinson's colon to her vagina in such a way that feces came through her vagina.' " Defendants also point to Dr. Braveman's testimony opining that the surgical error occurred by inserting a stapler through the vagina instead of the rectum.

However, defendants' argument conflates proffered evidence of the "cause" of Robinson's injury with the injurious condition itself. Robinson's injurious condition involved the direct attachment of her small intestine to her vagina, resulting in the passing of feces through her vagina. Plaintiffs allege that the colectomy procedure was "botched," resulting in this injurious condition. Although plaintiffs' proffered evidence from Dr. Braveman indicates that Dr. Mantyh and/or Dr. Huang improperly inserted the surgical stapler into her vagina, rather than her

rectum, thereby causing the injurious result, Dr. Mantyh's testimony directly contradicts Dr. Braveman's testimony. Dr. Mantyh testified as to his opinion that because Robinson had undergone prior gynecological surgeries, her vaginal cuff had "fused" with a portion of her rectum and was then caught within the surgical stapler during the colectomy procedure, thereby creating a three-way communication between the small intestine, rectum, and vagina. Dr. Braveman's testimony, however, directly contradicts this testimony, opining that Robinson's small intestine was directly connected to her vagina and that her rectum was left unattached to anything. Such conflicting testimony, at a minimum, creates a question of material fact for a jury as to the precise cause of Robinson's injurious condition. "The inference created by *res ipsa* will defeat a motion for summary judgment even though the defendant presents evidence tending to establish absence of negligence." *Schaffner*, 77 N.C. App. at 691-92, 336 S.E.2d at 118.

Plaintiffs' proffer of Dr. Braveman's testimony in no way establishes direct proof of the precise cause of Robinson's injury. Rather, such testimony constitutes plaintiffs' proffer of evidence as to how the injury might have occurred. Notably, in *res ipsa* cases, "[t]he fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that is necessary to offer." *Pendergraft v. Royster*, 203 N.C. 384, 394, 166 S.E.2d 285, 290 (1932) (internal quotation marks and citation omitted). Allegations addressing plaintiffs' evidence as to the attendant circumstances of Robinson's injury is not equivalent to direct proof of the cause of the injury. *Cf. Rowell*, 197 N.C. App. at 697, 678 S.E.2d at 752 (holding that the doctrine of *res ipsa loquitur* was not applicable where the plaintiff specifically alleged that a particular incision made by the defendant doctor to the plaintiff's left knee was the exact cause of her injury). Here, unlike the circumstances presented in *Rowell*, plaintiffs allege that Robinson's "botched" colectomy was the cause of her injurious condition, and plaintiffs' proffer of expert testimony provides only a theory of the attendant circumstances that resulted in Robinson's injury during her surgical procedure. Plaintiffs have neither alleged nor presented direct evidence of the precise human cause of Robinson's injury.

Moreover, Robinson was unconscious during her surgical procedure and would have no way of presenting direct evidence as to the precise human cause of her injurious condition. *Cf. Yorke*, 192 N.C. App. at 353, 666 S.E.2d at 136 (distinguishing the factual circumstances presented in *Parks*, 68 N.C App. 202, 314 S.E.2d 287, "where the plaintiff was under general anesthesia at the time her injury occurred and therefore

could not offer direct proof of its cause," with the factual circumstances therein presented, in which the patient "was fully aware of the cause of his alleged injury. In fact, [the patient] identified his blood pressure cuff as the source of his injury numerous times to medical personnel over the four days that his injury allegedly occurred. When a plaintiff offers direct evidence of the negligence that led to his injury, the doctrine of *res ipsa loquitur* is inapplicable"). Here, unlike the circumstances presented in *Yorke*, Robinson is unable to offer direct evidence of the negligence that led to her injury, hence plaintiffs' reliance on the doctrine of *res ipsa loquitur* and the proffer of Dr. Braveman's testimony.

As this Court has previously noted: "[*Res ipsa*] must not be supposed to require that plaintiff . . . must rely altogether upon this prima facie showing . . . of negligence, for [s]he may resort to other proof for the purpose of particularizing the negligent act and informing the jury as to the special cause of [her] injury." *Schaffner*, 77 N.C. App. at 694, 336 S.E.2d at 119 (alterations and ellipsis in original) (internal quotation marks and citation omitted). Here, plaintiffs' proffer of Dr. Braveman's testimony opining as to the particular human cause of Robinson's injurious condition does not preclude the application of the *res ipsa* doctrine in this case, where the negligence may be inferred from the physical cause of Robinson's injury — the direct attachment of her small intestine to her vagina. *Diehl*, 140 N.C. App. at 377-78, 536 S.E.2d at 362.

We hold plaintiffs' complaint sufficiently alleges, and plaintiffs' forecast of evidence sufficiently demonstrates, that (1) Robinson's injury is not an inherent risk of a colectomy procedure and occurs rarely, if ever, in the absence of negligence; (2) the surgical procedure resulting in Robinson's injury was exclusively within defendants' control; (3) because Robinson was unconscious, she has no direct proof as to the precise cause of her injurious condition; and (4) no expert testimony is required in order to understand that Robinson's injurious condition is likely the result of defendants' negligent act or omission during the course of her surgical procedure. This is certainly not a case in which the mere result of Robinson's treatment "was not satisfactory or less than could be desired, or different from what might be expected." *Mitchell*, 219 N.C. at 182, 13 S.E.2d at 245. Accordingly, no bar exists to plaintiffs' assertion of the *res ipsa loquitur* doctrine in this case, and plaintiffs' complaint and forecast of evidence both satisfy the requirements of Rule 9(j)(3) and survive defendants' motion for summary judgment on that issue. "Issues of negligence should ordinarily be resolved by a jury and are rarely appropriate for summary judgment." *Schaffner*, 77 N.C. App. at 691, 336 S.E.2d at 117; *see also Parks*, 68 N.C. App. at 205,

314 S.E.2d at 289 (noting that in *Easter v. Hospital,* 303 N.C. 303, 305, 278 S.E.2d 253, 255 (1981), a medical negligence case, "[our] Supreme Court recognized the general rule that only in exceptional negligence cases is summary judgment appropriate").

### IV. Forecast of Evidence Satisfying Elements of Medical Negligence Claim Against Dr. Mantyh and Dr. Huang

**[3]** We next address whether plaintiffs presented sufficient evidence of their medical negligence claim to survive defendants' motion for summary judgment.

In order to maintain an action for medical malpractice, a plaintiff must offer evidence to establish (1) the applicable standard of care; (2) breach of that standard; (3) proximate causation; and (4) damages. *Atkins v. Mortenson,* 183 N.C. App. 625, 630, 644 S.E.2d 625, 629, *appeal dismissed,* 361 N.C. 690, 652 S.E.2d 255 (2007). In the present case, defendants contend that plaintiffs failed to present competent evidence on the applicable standard of care and breach of that standard, thereby rendering summary judgment in defendants' favor proper. In Judge Hudson's supplemental order/advisory opinion, he likewise concluded that summary judgment in favor of defendants was proper, in the alternative, because plaintiffs failed to establish evidence of the applicable standard of care in that Dr. Braveman, plaintiffs' sole standard of care expert, "is not qualified to offer standard of care opinions pursuant to N.C.G.S. § 90-21.12 and Rule 702(b) of the North Carolina Rules of Evidence on grounds that he impermissibly applied a national standard of care" and that Dr. Braveman "offered no evidence of his familiarity with either the training and experience of the Defendant, Dr. Mantyh, or the community standard of care in Durham, North Carolina, or a similar community." Judge Hudson likewise concluded that plaintiffs failed to offer any evidence "of any breach of the standard of care by Dr. Huang."

"One of the essential elements of a claim for medical negligence is that the defendant breached the applicable standard of medical care owed to the plaintiff." *Goins v. Puleo,* 350 N.C. 277, 281, 512 S.E.2d 748, 751 (1999). To meet their burden of proving the applicable standard of care, plaintiffs must satisfy the requirements of N.C. Gen. Stat. § 90-21.12 (2011), which provides:

> [I]n any medical malpractice action as defined in G.S. 90-21.11(2)(a), the defendant health care provider shall not be liable for the payment of damages unless the trier of fact finds by the greater weight of the evidence that the

care of such health care provider *was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action*[.]

*Id.* § 90-21.12(a) (emphasis added).

Plaintiffs must establish the relevant standard of care through expert testimony. When plaintiffs have introduced evidence from an expert stating that the defendant doctor did not meet the accepted medical standard, [t]he evidence forecast by the plaintiffs establishes a genuine issue of material fact as to whether the defendant doctor breached the applicable standard of care and thereby proximately caused the plaintiffs' injuries. This issue is ordinarily a question for the jury, and in such case, it is error for the trial court to enter summary judgment for the defendant.

*Crocker*, 363 N.C. at 142-43, 675 S.E.2d at 628 (alteration in original) (internal quotation marks and citations omitted).

In the present case, Dr. Braveman testified during his deposition that he knew nothing about Dr. Mantyh's education, training, or experience at that time. Dr. Braveman testified that he had never visited Duke University Health System or any of its facilities and knew nothing about their surgical facilities. Dr. Braveman stated that he had not reviewed the website or read any materials about Duke. Dr. Braveman stated that all he knew about Duke was that it had "a great reputation." Dr. Braveman stated that he knew Duke was "a tertiary care facility and takes care of all aspects of medical problems." Dr. Braveman stated that the only information he had about Duke was that "it's a university health system and it's got a national reputation[.]" Dr. Braveman further testified that he believed there existed a national standard of care with respect to colorectal surgeons and that the standard of care prevalent at Duke University "should not be different" from the standard of care prevalent at the three medical centers with which he was familiar.

Subsequent to his deposition, Dr. Braveman submitted an affidavit stating that he was "familiar with the standard of care for physicians such as Dr. Mantyh practicing in Durham, North Carolina, the Research Triangle area, and similar communities such as Worcester, Massachusetts[;] Cleveland, Ohio[;] and Columbus, Ohio in 2008 with

respect to the type of procedure Dr. Mantyh performed on Linda Robinson on or about March 12, 2008." Dr. Braveman further stated in his affidavit that "[a]t the time of [his] testimony, [he] had specific familiarity with the standard of care in the three communities in which [he had] practiced and was of the opinion then that the standard of care was similar across those communities and Durham, North Carolina." Dr. Braveman's affidavit explained that since giving his deposition testimony, "[he had] confirmed [his] opinion with Internet research regarding Duke University Hospital and [had] confirmed that it is a sophisticated training hospital such as the other ones with which [he had] personal familiarity."

Where summary judgment is granted on the basis that a doctor's testimony was to a national rather than a community standard of care,

> the critical inquiry is whether the doctor's testimony, taken as a whole, meets the requirements of N.C. Gen. Stat. § 90-21.12. In making such a determination, a court should consider whether an expert is familiar with a community that is similar to a defendant's community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community.

*Pitts v. Nash Day Hosp., Inc.*, 167 N.C. App. 194, 197, 605 S.E.2d 154, 156 (2004), *aff'd per curiam*, 359 N.C. 626, 614 S.E.2d 267 (2005). In our recent opinion in *Higginbotham v. D'Amico*, ___ N.C. App. ___, ___ S.E.2d ___, No. COA12-1099 (N.C. Ct. App. Apr. 16, 2013), we explained:

> The mere use of the phrase "national standard of care" is not fatal to an expert's testimony if the expert's testimony otherwise meets the demands of section 90-21.12.

> In the alternative, [w]here the standard of care is the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community.

*Id.* at ___, ___ S.E.2d at ___, No. COA12-1099, slip op. at 6 (alteration in original) (internal quotation marks and citations omitted). We conclude Dr. Braveman's testimony meets this standard.

Defendants argue that Dr. Braveman's affidavit is impermissible because it contradicts his former deposition testimony. *See Pinczkowski v. Norfolk S. Ry. Co.*, 153 N.C. App. 435, 440, 571 S.E.2d 4, 7 (2002) ("[A] party opposing a motion for summary judgment cannot create a

genuine issue of material fact by filing an affidavit contradicting his prior sworn testimony."); *Barringer*, 197 N.C. App. at 257-58, 677 S.E.2d at 478. However, we conclude that rather than contradicting his testimony, Dr. Braveman's affidavit actually supplements it. In his affidavit, Dr. Braveman reaffirms his belief that the applicable standard of care is similar to that of the medical facilities with which he was familiar and that he had confirmed his beliefs through Internet research. "[O]ur law does not prescribe any particular method by which a medical doctor must become familiar with a given community. Book or Internet research may be a perfectly acceptable method of educating oneself regarding the standard of medical care applicable in a particular community." *Grantham v. Crawford*, 204 N.C. App. 115, 119, 693 S.E.2d 245, 248-49 (2010) (alteration in original) (internal quotation marks and citations omitted). Although Dr. Braveman testified as to his opinion regarding a national standard of care for colorectal surgeons, Dr. Braveman reinforced his opinion through his affidavit, pointing to particular research he had conducted on Duke University and Dr. Mantyh. We fail to see how Dr. Braveman's affidavit contradicted his testimony. Considered as a whole, Dr. Braveman's testimony satisfied the requirements of N.C. Gen. Stat. § 90-21.12.

Having sufficiently presented expert testimony to satisfy their burden of establishing the standard of care for colorectal surgeons performing a colectomy procedure at Duke University on 12 March 2008, plaintiffs likewise presented sufficient evidence that both Dr. Mantyh and Dr. Huang breached that standard. Specifically, Dr. Braveman testified as to his opinion that Dr. Mantyh directly breached the standard of care by not ensuring that the surgical stapler was placed correctly anatomically. Thus, because plaintiffs presented expert testimony establishing a standard of care and breach of that standard by Dr. Mantyh, the trial court erred in granting summary judgment in favor of that defendant on that basis. *Crocker*, 363 N.C. at 142-43, 675 S.E.2d at 628.

In addition, plaintiffs presented sufficient evidence that Dr. Huang incorrectly placed the surgical stapler into Robinson's vagina, thereby causing the injurious result.

> Expert testimony is not required . . . to establish the standard of care, failure to comply with the standard of care, or proximate cause, in situations where a jury, based on its common knowledge and experience, is able to decide those issues. The application of this "common knowledge" exception to the requirement of expert testimony in medical malpractice cases has been reserved for those

> situations in which a physician's conduct is so grossly negligent *or the treatment is of such a nature that the common knowledge of laypersons is sufficient to find* the standard of care required, *a departure therefrom,* or proximate causation.

*Bailey v. Jones,* 112 N.C. App. 380, 387, 435 S.E.2d 787, 792 (1993) (emphasis added) (citations omitted). Here, plaintiffs' proffer of evidence tends to show that Dr. Huang breached the applicable standard of care in incorrectly placing the surgical stapler into Robinson's vagina and failing to ensure its proper anatomical placement. A jury, based on its common knowledge, could decide from this evidence that Dr. Huang breached the standard of care owed to Robinson. Accordingly, the trial court erred in granting summary judgment in favor of defendants as to plaintiffs' claim for medical negligence against Dr. Mantyh and Dr. Huang.

## V. Summary Judgment in Favor of DUHS

[4] In his supplemental order/advisory opinion, Judge Hudson concluded that summary judgment in favor of DUHS was proper because "Dr. Mantyh is not an agent or apparent agent of Defendant DUHS." Judge Hudson found as a fact that "DUHS did not have any relationship with Dr. Mantyh on March 12, 2008." Despite that finding, however, in his affidavit, Dr. Huang stated that at all times relevant to the events alleged in plaintiffs' complaint, he was employed by DUHS. Because plaintiffs presented sufficient evidence establishing a medical negligence claim against Dr. Huang, plaintiffs' claim of vicarious liability as to DUHS on behalf of Dr. Huang, at a minimum, should proceed.

In addition, our Courts have noted that "apparent agency would be applicable to hold the hospital liable for the acts of an independent contractor if the hospital held itself out as providing [the] services and care." *Diggs v. Novant Health, Inc.,* 177 N.C. App. 290, 305, 628 S.E.2d 851, 861 (2006).

> Under this approach, a plaintiff must prove that (1) the hospital has held itself out as providing medical services, (2) the plaintiff looked to the hospital rather than the individual medical provider to perform those services, and (3) the patient accepted those services in the reasonable belief that the services were being rendered by the hospital or by its employees. A hospital may avoid liability by providing meaningful notice to a patient that care is being provided by an independent contractor.

*Id.* at 307, 628 S.E.2d at 862.

Here, plaintiffs presented evidence that Dr. Mantyh was the Chief of Gastrointestinal and Colorectal Surgery at the hospital and was an assistant professor with tenure in surgery at Duke University, from which he receives a paycheck. In addition, plaintiffs presented evidence showing that DUHS lists Dr. Mantyh as one of its physicians on its website. "[A] jury could reasonably find [that these facts] indicated to the public that [DUHS] was providing [surgical] services to its patients." *Id.* at 307-08, 628 S.E.2d at 862. Plaintiffs also proffered evidence tending to show that Robinson was referred by another physician to DUHS and/or Dr. Mantyh for evaluation of her colonic inertia problems. Thus, there is no evidence in the record tending to show that Robinson specifically sought out Dr. Mantyh to perform her surgical treatment. Indeed, throughout the present litigation, plaintiffs have continually asserted that Dr. Mantyh is an agent and/or employee of DUHS. The trial court erred in granting summary judgment in favor of DUHS.

### VI. Punitive Damages Claim

**[5]** Plaintiffs have failed to present any argument that the trial court's grant of summary judgment in favor of defendants on their punitive damages claim was improper. Indeed, plaintiffs' complaint and forecast of evidence fails to provide any facts that defendants' conduct in causing Robinson's injurious condition was willful, wanton, malicious, or fraudulent. Accordingly, we affirm the trial court's grant of summary judgment in favor of defendants as to plaintiffs' claim for punitive damages.

### VII. Conclusion

In summary, we hold Judge Hudson's order granting summary judgment in favor of defendants on the basis of plaintiffs' compliance with Rule 9(j) must be vacated, as it impermissibly overruled Judge Hobgood's order denying defendants' motion to dismiss on the same legal issue. We hold that plaintiffs' complaint sufficiently alleges, and plaintiffs' forecast of evidence sufficiently demonstrates, that no bar exists to plaintiffs' assertion of the doctrine of *res ipsa loquitur* in this case. Thus, plaintiffs' complaint satisfies the requirements of Rule 9(j)(3) for medical malpractice actions and plaintiffs' forecast of evidence is sufficient to survive defendants' motion for summary judgment on that issue.

Judge Hudson's order granting summary judgment in favor of defendant Dr. Mantyh is reversed, as plaintiffs presented sufficient evidence to satisfy all elements of a medical malpractice claim against him. Accordingly, plaintiffs' claim for medical negligence against Dr. Mantyh

ROBINSON v. DUKE UNIV. HEALTH SYS., INC.

[229 N.C. App. 215 (2013)]

may proceed. Judge Hudson's order granting summary judgment in favor of defendant Dr. Huang is likewise reversed, as plaintiffs presented sufficient evidence that Dr. Huang breached the applicable standard of care in improperly placing the surgical stapler into Robinson's vagina. Judge Hudson's order granting summary judgment in favor of DUHS is also reversed, as Dr. Huang was admittedly employed by DUHS at the time of the alleged medical negligence, and plaintiffs' evidence sufficiently demonstrates that Dr. Mantyh was an apparent agent of DUHS.

We further hold that Judge Hudson's order granting summary judgment in favor of defendants DUAP and Dr. Patel is affirmed, as plaintiffs expressly did not present any argument as to why summary judgment is not appropriate as to those defendants. Plaintiffs' action therefore remains dismissed as against defendants DUAP and Dr. Patel. Judge Hudson's order granting summary judgment in favor of defendants on plaintiffs' claim for punitive damages is likewise affirmed, as plaintiffs presented no argument as to why summary judgment is not appropriate on that issue, and plaintiffs failed to allege and/or present any evidence that defendants' conduct in this case was willful, wanton, malicious, or fraudulent. Therefore, plaintiffs' claim for punitive damages remains dismissed. Finally, Judge Hobgood's order granting defendants' motion to dismiss plaintiffs' action as to defendant Dr. Hodgins is likewise affirmed, as plaintiffs did not appeal from that order dismissing the action against that defendant. Plaintiffs' action remains dismissed as against Dr. Hodgins.

We remand the present case to the trial court for further proceedings against defendants Dr. Mantyh, Dr. Huang, and DUHS, consistent with this opinion.

Affirmed in part, vacated in part, reversed in part, and remanded.

Judge CALABRIA concurs in result only.

STEELMAN, Judge, concurring in the result.

I concur with the result reached in parts IIIA, IV, V, and VI of the majority opinion. Given the holding in part IIIA of the opinion, the analysis and holdings in part IIIB of the opinion are unnecessary. *See O'Neill v. S. Nat'l Bank*, 40 N.C. App. 227, 230, 252 S.E.2d 231, 233 (1979) ("An Order denying a Rule 12(b)(6) motion is interlocutory and clearly not appealable.").