IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1300

Filed: 21 April 2020

Halifax County, No. 18-CVS-50

RENE ROBINSON, individually and as ADMINISTRATRIX of the ESTATE OF VELVET FOOTE, Plaintiffs,

v.

Halifax Regional Medical Center; Dr. Jude Ojie, Dr. Simbiso Ranga, and Megan Orren Rogersen, individually and as employees, agents, of Halifax Regional Medical Center, Defendants.

Appeal by Plaintiffs from order entered 23 May 2018 by Judge Alma Hinton in Halifax County Superior Court. Heard in the Court of Appeals 8 May 2019.

*Richard E. Batts, PLLC, by Richard E. Batts, for Plaintiffs-Appellants.*

*Harris, Creech, Ward & Blackerby, PA, by Christina J. Banfield, C. David Creech, and Jay C. Salsman, for Defendants-Appellees.*

DILLON, Judge.

Plaintiffs appeal from the trial court's order granting Defendants' motion to dismiss Plaintiffs' complaint. We affirm in part and reverse in part.

I. Background

Plaintiff Rene Robinson is the daughter of Velvet Foote, deceased, and the administratrix of Ms. Foote's estate. On 15 January 2015, Ms. Foote died at Halifax Regional Medical Center (the "Hospital"), where she had been attended by Drs. Jude Ojie and Simbiso Ranga (the "Doctors") and Nurse Megan Orren Rogersen.

Two years and two days later, on 17 January 2017, Plaintiffs brought a wrongful death action against the Hospital and the Doctors.[1] However, six months later, Plaintiffs voluntarily dismissed that first action.

On 16 January 2018, Plaintiffs, represented by a different attorney, filed this present wrongful death action against the Doctors and the Hospital, but added Nurse Rogersen as a defendant. Also, Plaintiffs added a tort claim against Nurse Rogersen for a broken jaw injury Ms. Foote suffered while at the Hospital.

Defendants moved to dismiss Plaintiffs' claims. Defendants' motion was largely based on their contention that Plaintiffs did not comply with Rule 9(j) of our Rules of Civil Procedure. After a hearing on the matter, the trial court granted Defendants' motion. Plaintiffs timely appealed.

## II. Analysis

### A. Claims Against the Doctors – Rule 9(j) Compliance

In its order, the trial court dismissed the wrongful death claims against the Doctors and the Hospital based on Plaintiffs' failure to comply with Rule 9(j) of our Rules of Civil Procedure. Based on our reasoning below, we hold that the trial court erred in dismissing Plaintiffs' claims against the Doctors based on a failure to comply with Rule 9(j) *at this stage of the litigation*. In short, Plaintiffs' complaint complies

---

[1] The statute of limitations for a wrongful death action is two years. N.C. Gen. Stat. § 1-53(4) (2014). The day the first complaint was filed, 17 January 2017, was the day after Martin Luther King, Jr., Day.

with Rule 9(j) and there has been no discovery conclusively establishing that Plaintiffs were not reasonable in expecting their Rule 9(j) expert would qualify as an expert at the time they filed their complaint. Our holding should not be construed to foreclose a Rule 9(j) dismissal if future discovery justifies such dismissal.[2]

Rule 9(j) requires a plaintiff alleging a medical malpractice claim to specifically plead in her complaint that the medical care and all medical records pertaining to the care available to the plaintiff have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care. N.C. Gen. Stat. § 1A-1, Rule 9(j) (2014).

Here, Plaintiffs filed two documents at the commencement of this action. First, Plaintiffs filed their complaint. This complaint contains the required Rule 9(j) language, alleging that "[t]he medical care and all medical records pertaining to the alleged negligence that are available to the Plaintiffs . . . have been reviewed by a person who is reasonably expected to qualify as a witness under Rule 702 . . . and who is willing to testify that the medical care did not comply with the applicable

---

[2] Plaintiffs argue an alternate ground to support the trial court's dismissal, a ground not relied upon by the trial court; namely, that no Rule 9(j) certification was necessary because the Doctors had committed *intentional* torts in causing Ms. Foote's death when they placed DNR orders in Ms. Foote's file. Plaintiffs contend that, therefore, Ms. Foote's death was not caused by the provision of medical care. However, based on our resolution of the 9(j) issue, we need not reach this issue.

standard of care," and that the review occurred prior to 17 January 2017,[3] when the first complaint was filed.

Second, Plaintiffs filed a motion which identified their Rule 9(j) expert as Dr. Edward Mallory and sought to qualify him as an expert to testify at trial under Rule 702 of our Rules of Evidence. Attached to the motion was a one-page *curriculum vitae* ("CV") of Dr. Mallory. This CV outlined Dr. Mallory's career as an accomplished *emergency room doctor* in Florida, where he lived. (Plaintiffs' complaint referenced to this motion to qualify.)

Before filing an answer or engaging in any discovery, Defendants moved to dismiss Plaintiffs' complaint. Defendants also filed and served an affidavit from each of the Doctors, in which each averred that he was not an emergency room doctor, but rather an internist and hospitalist, and did not provide any care to Ms. Foote in the capacity of an emergency room doctor.

After a hearing on Defendants' motion to dismiss, the trial court entered its order. In its dismissal order, the trial court stated that it was relying on the

---

[3] Our Supreme Court has held that the Rule 9(j) expert must have conducted his review prior to the running of the statute of limitations. *See Moore v. Proper*, 366 N.C. 25, 31, 726 S.E.2d 812, 817 (2012) (explaining that review must occur before filing the complaint); *see also Vaughan v. Mashburn*, 371 N.C. 428, 438-39, 817 S.E.2d 370, 377-78 (2018) (clarifying that where the plaintiff takes advantage of a procedural rule that allows her to file a complaint after the running of the statute of limitations, then the pleading must allege that the Rule 9(j) expert review occurred before the running of said statute of limitations). Our Supreme Court's holding in *Vaughan* is consistent with its holdings in prior opinions from that Court as explained in *Boyd v. Rekuc*, 246 N.C. App. 227, 782 S.E.2d 916 (2016).

complaint; Plaintiffs' unverified <u>motion to qualify Dr. Mallory</u>, including <u>Dr. Mallory's CV</u>; "the materials submitted by the parties," which presumably were <u>the affidavits of the Doctors;</u> and the arguments of counsel.[4]

The trial court concluded that Plaintiffs' complaint *on its face* regarding Dr. Mallory's review does comply with Rule 9(j), stating that "Plaintiffs did include a certification, which on its face meets the requirements of Rule 9(j)[.]"

However, the trial court, nonetheless, dismissed Plaintiffs' claims for three reasons: (1) the CV attached to Plaintiffs' unverified motion showed that Dr. Mallory practiced in a different specialty than the Doctors' specialty as indicated in their affidavits; (2) there was nothing in the CV or otherwise which indicated that Dr. Mallory was familiar with the standard of care in Halifax County; and (3) there was nothing in the CV or otherwise which indicated that Dr. Mallory had experience admitting patients into a hospital or entering DNR orders to patients admitted to hospitals:

> [B]ased on the information submitted to the Court contained in Plaintiff[s'] Complaint and Motion [to qualify Dr. Mallory as a Rule 702 expert], the Court finds that [Dr. Mallory] is an emergency room physician, and that Defendants [Doctors] practice internal medicine as hospitalists[.] Accordingly, Dr. Mallory does not practice in the same specialty as Defendant [Doctors].

---

[4] Specifically, the order states that the trial court was relying on "the pleadings, including Plaintiff[s'] Motion to Qualify [Dr. Mallory as an] Expert Witness and the documents attached thereto, [ ] other materials submitted by the parties and upon hearing argument of counsel[.]" The only "document[ ]" attached to Plaintiffs' Motion was a one-page CV of Dr. Mallory. The only "other materials" that are part of the record before us are the affidavits of the Doctors.

> . . . The Court further finds that nothing submitted with Plaintiff[s'] Motion [to qualify Dr. Mallory as a Rule 702 expert] indicates that Dr. Mallory is or could be familiar with the standard of care for internal medicine physicians in Halifax County or similarly situated communities, and further nothing indicates that Dr. Mallory has experience in admitting patients or entering [DNR] Orders for patients admitted to hospitals, both of which constitute the substance of Plaintiff[s'] claim against [the Doctors].
>
> Further, Plaintiffs have neither alleged or demonstrated any extraordinary circumstances that would justify the Court qualifying Dr. Mallory under Rule 702(e). The Court specifically finds that Plaintiffs could not have reasonably expected that Dr. Mallory would qualify under Rule 702[,] and therefore [she has] not complied with Rule 9(j)[.]

In so ruling, as explained below, we conclude that the trial court "jumped the gun" in determining that Plaintiffs failed to comply with Rule 9(j).

Our Supreme Court has explained that Rule 9(j) is a gatekeeping rule and should be viewed differently than a motion to qualify an expert under Rule 702:

> Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review *before* filing of the action. Rule 9(j) thus operates as a preliminary qualifier to control pleadings rather than to act as a general mechanism to exclude expert testimony. Whether an expert will ultimately qualify to testify [at trial] is controlled by Rule 702. The trial court has wide discretion to allow or exclude testimony under that [Rule 702].
>
> However, the preliminary, gatekeeping question of whether a proffered expert witness is reasonably expected to qualify as an expert witness under Rule 702 is a different

> inquiry from whether the expert *will actually* qualify under
> Rule 702.

*Moore v. Proper*, 366 N.C. 25, 31, 726 S.E.2d 812, 817 (2012) (emphasis in original) (internal quotation marks and citation omitted). That is, under Rule 9(j), to get past the gate into the courthouse, a plaintiff must have the opinion of an expert who *at the time she files her complaint she reasonably expects will qualify* under Rule 702. However, once in the courtroom, the plaintiff (typically) must offer the opinion of an expert who, in fact, qualifies under Rule 702 to get to the jury. Accordingly, it is possible for a plaintiff to get through the initial pleading Rule 9(j) gate with one expert and then later, even if the trial judge rules that her Rule 9(j) expert does not qualify under Rule 702, for that plaintiff to satisfy her burden of proof at trial through the testimony of another expert.

To comply with Rule 9(j), our Supreme Court instructs that the plaintiff must have exercised "reasonable diligence under the circumstances" to formulate a reasonable belief at the time she files her complaint that her certifying expert will qualify under Rule 702. *Id* at 31, 726 S.E.2d at 817.

A plaintiff's complaint is certainly subject to dismissal *if* the pleading *on its face* does not comply with Rule 9(j), akin to a Rule 12(b)(6) dismissal. *See Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002) (requiring dismissal when the plaintiff's pleading is not in compliance with the Rule's requirements). For instance, in *Vaughan* our Supreme Court held that an amended complaint which fails to plead

that the expert review occurred before the statute of limitations ran must be dismissed, construing the language in Rule 9(j) that the medical care and records "have been reviewed":

> Next, we addressed an issue for which we granted discretionary review . . . whether an amended complaint which fails to allege that review of the medical care in a medical malpractice action took place before the filing of the original complaint satisfies the requirements of Rule 9(j). Consistent with our prior discussion of legislative intent, we held that it does not.

*Vaughan*, 371 N.C. at 439, 817 S.E.2d at 377 (internal citation omitted). And our Court has held that a complaint which pleads that the certifying expert only reviewed "certain" medical records instead of "all" medical records as required by Rule 9(j) must be dismissed. *Fairfield v. WakeMed*, ___ N.C. App. ___, ___, 821 S.E.2d 277, 281 (2018) (Judge, now Justice, Davis, writing for the Court).

Also, our Supreme Court instructed that "even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate[,]" akin to a Rule 56 summary judgment. *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008).

For example, if discovery shows that the plaintiff's expectation was not reasonable that her Rule 9(j) expert would qualify as an expert under Rule 702, based on what she reasonably should have known at the time she filed her complaint, her

complaint must be dismissed for failing to satisfy the gatekeeping requirement, irrespective of whether she later procures a Rule 702-qualified expert. The Court explained that a dismissal at this summary judgment-like stage, though, should be rare, instructing that the trial court is to draw all reasonable inferences from the discovery in favor of the plaintiff and only dismiss based on discovery if "no reasonable person" would have relied on the expert based on what was known when the complaint was filed:

> [T]o evaluate whether a party reasonably expected its proffered expert witness to qualify under Rule 702, the trial court must look to all the facts and circumstances that were known or should have been known by the party at the time of filing.
>
> Though the party is not necessarily required to know all the information produced during discovery at the time of filing, the trial court will be able to glean much of what the party knew or should have known from subsequent discovery materials.
>
> But to the extent there are *reasonable* disputes or ambiguities in the forecasted evidence, the trial court **should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage** of determining whether the party *reasonably expected* the expert witness to qualify under Rule 702.
>
> When the trial court determines that [the plaintiff's] reliance on [its proffered expert] was not reasonable, the court must make written findings of fact to allow a reviewing appellate court to determine whether those findings are supported by competent evidence. . . . We note that because a trial court is not generally permitted to make factual findings at the summary judgment stage, **a**

> **finding that reliance on a fact or inference is not reasonable will occur only in the rare case in which no reasonable person would so rely**.

*Moore*, 366 N.C. at 32, 726 S.E.2d at 817-18 (emphasis added in bold) (internal quotation marks and citation omitted).[5]

In the present case, the trial court did consider matters outside the face of the complaint, such as the Doctor's affidavits and Dr. Mallory's CV which was attached to Plaintiffs' unverified motion to qualify Dr. Mallory under Rule 702. But at this hearing, Plaintiffs' motion to qualify Dr. Mallory was not before the trial court, just Defendants' Rule 9(j) dismissal motion. At the hearing, Defendants established that the Doctors were internists and hospitalists and reiterated that Plaintiffs' complaint against them was based on their failure to admit Ms. Foote into the Hospital more quickly once Ms. Foote presented herself to the Hospital's emergency room and to properly care for her once she was admitted.

---

[5] There are a number of cases from our Court which are arguably at odds with the holding in our Supreme Court's *Moore* opinion, that a trial judge is to draw all reasonable inferences in favor of the plaintiff. Specifically, in *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, our Court held that a trial judge had no duty to review matters outside the complaint in the light most favorable to the plaintiff when considering a Rule 9(j) dismissal motion. 197 N.C. App. 238, 256, 677 S.E.2d 465, 477 (2009). *See also McGuire v. Riedle*, 190 N.C. App. 785, 787-88, 661 S.E.2d 754, 757 (2008). In any event, we apply *Moore*.

And in further support of our holding here, we note that our Supreme Court has recently affirmed the standard articulated in *Moore*, holding that the trial court is to view the evidence "in the light most favorable to plaintiff" and that the appellate court should conduct a *de novo* review, not "deferring [ ] to the findings of the trial court." *Preston v. Movahed*, ___ N.C. ___, ___ (2020), 2020 N.C. LEXIS 272, at *17 (reversing dismissal of complaint based on Rule 9(j)). As of the filing of our opinion here, however, the mandate for *Preston* has not yet issued.

Assuming, *arguendo*, it was appropriate for the trial court to consider Dr. Mallory's CV attached to an unverified motion at the hearing,[6] there was nothing in the CV which contradicted the assertion made in Plaintiffs' Rule 9(j) statement in their complaint. Though the CV outlined Dr. Mallory's extensive experience as an emergency room doctor, there is nothing in the CV which conclusively demonstrates that he has no expertise as an internist or hospitalist or otherwise that his expertise as an emergency room doctor does not include "the performance of the procedure that is the subject of the complaint and [ ] prior experience treating similar patients." N.C. Gen. Stat. § 8C-1, Rule 702(b)(1)(b) (2014).

Further, there is nothing in the CV to contradict Plaintiffs' assertion in their complaint that Dr. Mallory is familiar with the applicable standard of care, notwithstanding that the CV only indicates that Dr. Mallory practices in Florida. It just may be that Plaintiffs' expert has familiarity with the standard of care in Halifax County. *See Crocker v. Roethling*, 363 N.C. 140, 675 S.E.2d 625 (2009) (holding that summary judgment was inappropriate where plaintiff's expert, an Arizona doctor, testified that he had reviewed information concerning medical care in Goldsboro and was, thus, familiar with the standard of care in Goldsboro).

But it may alternatively be that discovery will, indeed, demonstrate that Plaintiffs should have not reasonably believed that their expert would qualify under

---

[6] It could be argued that consideration of the CV was appropriate since it was attached to a motion filed by Plaintiffs and that motion, otherwise, was referred to in Plaintiffs' complaint.

Rule 702. Indeed, after deposing Dr. Mallory or conducting other discovery, Defendants may be able to show that when Plaintiffs filed their complaint, they could not have reasonably expected Dr. Mallory to qualify, at which point, dismissal under Rule 9(j) would be appropriate. However, at this point, Defendants have simply not met their burden of showing that they are entitled to a dismissal under Rule 9(j). The trial court must reasonably infer that it was reasonable for Plaintiffs to expect Dr. Mallory would qualify as an expert under Rule 702, as they allege in their complaint, unless and until the discovery shows, even in the light most favorable to them, that they could not have so reasonably expected.

B. Personal Injury Claim Against Nurse Rogersen – *Res Ipsa Loquitur*

Plaintiffs asserted a personal injury claim under the doctrine of *res ipsa loquitur* against Nurse Rogersen arising from Ms. Foote's broken jaw, an injury which was discovered during Ms. Foote's autopsy. Plaintiffs do not allege how Ms. Foote's jaw came to be broken, but only that it became broken while in Nurse Rogersen's care. The trial court dismissed this claim, concluding that Plaintiffs had "failed to state an actionable *res ipsa loquitur* claim" as to negate the heightened pleading requirements pursuant to Rule 9(j). We conclude that the trial court did not err in its ruling.

Certification under Rule 9(j) is not required in a medical malpractice action where "[t]he pleading alleges facts establishing negligence under the existing

common-law doctrine of *res ipsa loquitur*." N.C. Gen. Stat. § 1A-1, Rule 9(j)(3). This Court "consider[s] *de novo* whether [a plaintiff's] complaint alleges facts establishing negligence under the doctrine of *res ipsa loquitur* pursuant to Rule 9(j)(3)." *Robinson v. Duke Univ. Health Sys.*, 229 N.C. App. 215, 224, 747 S.E.2d 321, 328 (2013).

For the doctrine to apply, the plaintiff must, in part, "allege facts from which a layperson could infer negligence by the defendant based on common knowledge and ordinary human experience." *Id.* at 224, 747 S.E.2d at 329; *see Howie v. Walsh*, 168 N.C. App. 694, 698, 609 S.E.2d 249, 252 (2005) ("[I]n order for the doctrine to apply, not only must [the] plaintiff have shown that the injury resulted from [the] defendant's . . . act, but [the] plaintiff must be able to show—without the assistance of expert testimony—that the injury was of a type not typically occurring in the absence of some negligence by [the] defendant.").

In the instant case, the allegations of Plaintiffs' complaint fail to demonstrate that the broken jaw suffered by Ms. Foote is the type of injury that would not ordinarily occur but for some negligent act or omission by an attending nurse. There may be any number of circumstances under which a broken jaw could occur in an elderly patient at a hospital, despite the provider's most diligent adherence to the applicable standard of care. Such determinations are not appropriately subject to inference based on a jury's common knowledge or experience, but instead fall squarely within those classes of situations in which reference to at least some degree of expert

medical testimony is required. We, therefore, agree with the trial court that Plaintiffs' complaint fails to state a personal injury claim against Nurse Rogersen under this doctrine.

And because the trial court properly concluded that Plaintiffs' personal injury claim was not actionable under *res ipsa loquitur*, certification under Rule 9(j) was required. Plaintiffs' Rule 9(j) certification contains no Rule 9(j) allegations pertaining to Nurse Rogersen or Ms. Foote's broken jaw. Therefore, the trial court did not err in dismissing Plaintiffs' personal injury claim against Nurse Rogersen.

C. Wrongful Death Claim Against Nurse Rogersen – Statute of Limitations

Plaintiffs asserted a wrongful death claim against Nurse Rogersen in their second complaint filed three years after Ms. Foote's death.

Wrongful death actions based on medical malpractice are subject to a two-year statute of limitations, which accrues as of the date of death. N.C. Gen. Stat. § 1-53(4) (2014). However, where an action is commenced within the applicable statute of limitations period and the plaintiff subsequently takes a voluntary dismissal pursuant to Rule 41(a), the plaintiff may refile the same action within one year. N.C. Gen. Stat. § 1A-1, Rule 41(a)(1). "The effect of this provision is to extend the statute of limitations by one year after a voluntary dismissal." *Staley v. Lingerfelt*, 134 N.C. App. 294, 298, 517 S.E.2d 392, 395 (1999).

Rule 41(a)'s tolling provision, however, does not apply to claims that were not asserted in the first complaint. *Estate of Savino v. Charlotte-Mecklenburg Hosp. Auth.*, ___ N.C. App. ___, ___, 822 S.E.2d 565, 577 (2018). "If the actions are fundamentally different or not based on the same claims, the new action is not considered a continuation of the original action, and Rule 41(a) may not be invoked." *Brannock v. Brannock*, 135 N.C. App. 635, 640, 523 S.E.2d 110, 113 (1999) (internal quotation marks and citation omitted).

Here, Plaintiffs' first complaint was filed within two years of Ms. Foote's death. However, their first complaint did not allege *any* claims against Nurse Rogersen, as she was not named as a defendant in that action. Therefore, Plaintiffs' wrongful death claim against Nurse Rogersen was properly dismissed.

## D. Claims Against the Hospital

Next, Plaintiffs sought to hold the Hospital liable for Ms. Foote's death based on the doctrine of *respondeat superior* and on a "corporate negligence" theory. The trial court dismissed Plaintiffs' *respondeat superior* claim on the grounds that they failed to comply with Rule 9(j). As we held that the trial court "jumped the gun" on the Rule 9(j) issue, we hold that the trial court erred in dismissing the claims against the Hospital. *See Blanton v. Moses H. Cone Mem. Hosp.*, 319 N.C. 372, 374-76, 354 S.E.2d 455, 457-58 (1987) (discussing a hospital's liability under the theories of *respondeat superior* and corporate negligence).

### E. Remaining Issues

Plaintiffs also asserted a personal injury claim for injuries that *they* allegedly suffered as a result of Defendants' treatment of Ms. Foote, which the trial court dismissed pursuant to Rule 12(b)(6). Because Plaintiffs do not contest the trial court's dismissal of this claim on appeal, any potential challenges thereto have been abandoned. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

Lastly, Plaintiffs present arguments in their brief relating to Rule 59 and Rule 60 motions that Plaintiffs filed following the trial court's order dismissing their complaint. However, Plaintiffs' notice of appeal only designates appeal from the trial court's order granting Defendants' motion to dismiss. Accordingly, we lack jurisdiction to address any arguments related to their motions under Rules 59 and 60. *See Chee v. Estes*, 117 N.C. App. 450, 452, 451 S.E.2d 349, 350 (1994) ("[T]he appellate court obtains jurisdiction only over the rulings specifically designated in the notice of appeal as the ones from which the appeal is being taken.").

### III. Conclusion

We affirm the trial court's dismissal of all claims against Nurse Rogersen. We also affirm the trial court's dismissal of Plaintiff Rene Robinson's personal injury claim asserted in her individual capacity, as she has abandoned that issue on appeal.

We reverse the trial court's dismissal of Plaintiffs' remaining claims against the Doctors and the Hospital. This reversal does not prejudice any right Defendants may have to seek dismissal under Rule 9(j) at a later time after discovery has occurred. We remand the matter for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART.

Judge ZACHARY concurs.

Judge BERGER concurring by separate opinion.

BERGER, Judge, concurring in separate opinion.

I concur with the majority in result only as to Section II B (*res ipsa* claim against Nurse Rogersen); Section II C (wrongful death claim against Nurse Rogersen); Section II D (claims against the hospital); and Section II E (miscellaneous remaining issues). As to Section II A, I disagree with the majority's reasoning. However, because the result will be the same upon remand, I concur in result only.

The majority concludes that the trial court should not have considered Dr. Mallory's resume, which was attached to a motion specifically referenced in Plaintiffs' amended complaint.[7] Although Section II A is short on citing to any legal authority, the majority seemingly concludes that a trial court should never consider evidence outside the complaint when making determinations for medical malpractice claims pursuant to Rule 12(b)(6) and Rule 9(j).

Rule 10(c) plainly states that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." N.C. Gen. Stat. § 1A-1, Rule 10(c) (2019). Moreover, "[w]hen reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true. In conducting our analysis, we also consider any exhibits attached to the complaint." *Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018) (citations and quotation marks omitted). *See also Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009) (citation and

---

[7] However, the majority appears unsure of its reasoning with its contradictory statement in footnote 6.

quotation marks omitted) ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment. Although it is true that the allegations of plaintiff's complaint are liberally construed and generally treated as true, the trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint."); *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (citation and quotation marks omitted) ("[T]his Court has held that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant.").

The majority is stuck on the notion that discovery must be conducted before the trial court can rule on a defendant's Rule 12(b)(6) motion. Under the majority's reasoning, the certification requirement in Rule 9(j) becomes meaningless, and litigation costs associated with frivolous claims would explode.

"Rule 9(j) serves as a gatekeeper . . . to prevent frivolous malpractice claims." *Estate of Wooden v. Hillcrest Convalescent Ctr., Inc.*, 222 N.C. App. 396, 401, 731 S.E.2d 500, 504 (2012). The Rule 9(j) certification requirement would not have any teeth if plaintiffs could simply parrot the boilerplate language and then wait until after discovery to speak with their purported expert. Attorneys would be given

2

license to sign pleadings with Rule 9(j) certifications even if the attorneys had not spoken with an expert.

This is exactly what happened here.

On August 22, 2018, Plaintiffs' Rule 60 motion was heard in the trial court. Plaintiffs' counsel was asked by the trial court if he had spoken with Dr. Mallory about his qualifications. Plaintiffs' counsel responded, "I have not talked to him. But the person who filed the [original] complaint talked to him, which he was required to do before filing the complaint, and that he did."[8] The trial court then asked:

> THE COURT: Before you signed this complaint filed in March of this year, did you speak with Dr. Mallory?
>
> [Plaintiffs' Counsel]: I did not.

Defendants argued to the trial court that, among other things, Plaintiffs' counsel never spoke with Dr. Mallory prior to filing the amended complaint. At the conclusion of Defendants' argument, the trial court again asked Plaintiffs' counsel if he had spoken with Dr. Mallory prior to filing the amended complaint. Plaintiffs' counsel responded:

> [Plaintiffs' Counsel]: Your honor, I did talk to Dr. - - I mean, what I - -
>
> THE COURT: You did talk to who[m]?
>
> [Plaintiffs' Counsel]: I did talk to Dr. Mallory.

---

[8] The original complaint contained a defective Rule 9(j) certification.

3

THE COURT:    Did you not just tell me you didn't talk to him?

[Plaintiffs' Counsel]:    I made a note here to stand up and clarify that to the Court. I made a note when I -- as I was sitting here and sat here for a moment and I remembered that -- I didn't talk to him about -- I merely called him on the phone to chat with him. I just wanted to clarify that. I called him on the phone, and I chatted with him a couple of times. But the information regarding the review of the records, that took place by [plaintiffs' former attorney], not by me.

THE COURT:    You had a general conversation?

[Plaintiffs' Counsel]:    I had a general conversation.

THE COURT:    But not about the case?

[Plaintiffs' Counsel]:    About the case but not the medical record.

THE COURT:    Not anything to gain your -- help your reasonableness in relying on him as an expert?

[Plaintiffs' Counsel]:    Your Honor, I relied upon the attorney who brought the case to me. And I talked to him. Again, I verified that Dr. Mallory existed, because I talked to him on the phone more than once.

Plaintiffs' counsel acknowledged that he relied on the defective Rule 9(j) certification in the original complaint, and never spoke with Dr. Mallory about his

qualifications.[9]  This may explain why Plaintiffs alleged in the amended complaint that their expert *"specialize[d] in the same specialty of internal medicine*, a general practitioner, as [Drs. Ojie and Ranga]." (Emphasis added).  Plaintiffs' expert was not a specialist in internal medicine.  Rather, he was a purported expert in emergency medicine.

As specifically referenced in the amended complaint, Plaintiffs attached a motion pursuant to Rule 702(e) to the complaint seeking to use Dr. Mallory as their expert.  Plaintiffs alleged in their motion that Dr. Mallory had "over 25 years of being an attending physician in Emergency Medicine, as it continues to be his line of work; also, since 2014, he provides his expertise and services as a medical expert for jury trials.  SEE EXHIBIT A – RESUME OF DR. EDWARD MALLORY."

---

[9] Plaintiffs' counsel filed a memorandum of law in opposition to Defendants' motion to dismiss which stated:

> Plaintiff Robinson and her attorney reviewed the provided Vitae of Dr. Mallory *and talked to him over the telephone* during his review of provided medical records and concluded his area of medical specialty entails the same as that of the medical doctors complained of and is eminently qualified to testify about the decision-making process required before entering a DNR[.]
>
> . . .
>
> It was reasonable for Plaintiffs to conclude *from talking to Dr. Mallory and from information that he provided them that his active clinical practice was of the same specialty or a similar specialty which includes within its specialty the performance of the procedures that subject (sic) of the complaint* and have prior experience treating similar patients."

(Emphasis added).

Dr. Mallory's resume stated that his experience was as owner and president of "Emergency Expert for You.com," and that he had experience as an attending physician in emergency medicine and pediatric emergency medicine. He is board certified in emergency medicine. Dr. Mallory's education included a residency in emergency medicine and an internship and medical degree in osteopathic medicine. Thus, Plaintiffs' complaint, on its face, provided contradictory information concerning the expert that they had certified conducted the review of Plaintiff's records. Further, despite Plaintiffs' counsel's admission that he had never spoken with Dr. Mallory about his qualifications, Plaintiffs' complaint alleged that they reasonably believed Dr. Mallory would qualify as an expert witness.

Again, Rule 9(j) serves a gate-keeping function. This Rule was "enacted by the legislature[] to prevent frivolous malpractice claims by requiring expert review *before* filing of the action." *Moore v. Proper,* 366 N.C. 25, 31, 726 S.E.2d 812, 817 (2012) (emphasis in original).

> In considering whether a plaintiff's Rule 9(j) statement is supported by the facts, a court must consider the facts relevant to Rule 9(j) and apply the law to them. In such a case, this Court does not inquire as to whether there was any question of material fact, nor do we view the evidence in the light most favorable to the plaintiff. Rather, our review of Rule 9(j) compliance is de novo, because such compliance clearly presents a question of law.

*Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 255-56, 677 S.E.2d 465, 477 (2009) (citations and quotation marks omitted). "When ruling on a

motion to dismiss pursuant to Rule 9(j), a court must consider the facts relevant to Rule 9(j) and apply the law to them." *Estate of Wooden*, 222 N.C. App. at 403, 731 S.E.2d at 506 (citation and quotation marks omitted).

Plaintiffs' amended complaint alleges medical malpractice for which a proper Rule 9(j) certification was required. Plaintiffs' counsel acknowledged that he did not comply with Rule 9(j). The record demonstrates that the Rule 9(j) certification was defective. An attorney cannot reasonably expect their expert to qualify as an expert for purposes of Rule 9(j) when that attorney has never spoken with the purported expert about his qualifications. Even if we assume the trial court "jumped the gun," the admissions by counsel demonstrate that Plaintiffs were not prejudiced by any possible error. The end result when the next round of costly motions are filed will again be in Defendants' favor.